UNITED STATES v. E. L. GOODSELL CO.

(Circuit Court of Appeals, Second Circuit. January 7, 1898.)

No. 32.

CUSTOMS DUTIES—NEW TARIFF LAW—IMPORTATION OF LEMONS.

The act of August 28, 1894, provides that, unless otherwise specially provided, there shall be levied upon all articles "imported from foreign countries or withdrawn for consumption" the rates of duty therein prescribed. An importation of lemons was entered a few days before the passage of the act, and, according to custom and the rules of administration of the port, were designated for examination on the wharf. On August 29th the goods were examined there, having remained in the custody of the government up to that time, and were then sold by the importers. *Held*, that they were dutiable under the new law.

This cause comes here upon appeal by the United States from a decision of the circuit court, Southern district of New York, affirming a decision of the board of general appraisers, which reversed the action of the collector of the port of New York in assessing certain boxes of lemons for duty. The facts appear in the opinion.

Henry C. Platt, for the United States.

W. Wickham Smith, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The vessel containing the lemons arrived at the port of New York on or prior to August 23, 1894. The goods were entered for duty on that day, and a written permit to land and deliver them was also issued on the same day, in due form, designating the goods for examination on the wharf, which, under the rules of customs administration at this port, dispensed with the necessity of their removal to the public stores or warehouses. On August 28, 1894, the tariff act of 1894, went into effect, supplanting the prior tariff act of 1890. On August 29, 1894, the goods were examined, and the permit, on being presented to the examiner, was indorsed by him "Examined," with his initials and the date. The lemons were sold by the importers on the wharf by auction, on August 29, 1894, according to the custom of importers to sell lemons and other fruits on the wharf, on arrival, without removal. It was customary to offer such goods for sale after, or at once on, the issue and receipt of the permit to land, and often before actual examination of the goods, which generally took place on the wharf at the time of sale. The lemons in question took this course. The examiner indorsed his examination on the permit August 29, 1894, at the time of the auction sale on the wharf, according to the prevailing custom in dealing with goods of that character. The goods were never in bond in any warehouse, but came direct from the vessel to the wharf, where they were sold by the importers, as aforesaid. It is the practice of the port, in the case of such goods, that the owner has no control over them until the permit of delivery has been presented to the examiner and duly indorsed by him. The entry was stamped, "Paid Aug. 23, 1894," and also stamped, "Liquidated September 8, 1894," but no additional duty was paid; the amount originally paid by the importer, on August 23, 1894, at the time of getting his duty-paid permit, being the same amount at which the duties were liquidated. The collector classified and assessed the lemons for duty under paragraph 301 of the act of 1890. The importers protested, claiming that their merchandise was dutiable under the lower rate of duty imposed in paragraph 216 of the act of 1894.

The act of 1894 provides as follows:

"On and after the first day of August, eighteen hundred and ninety-four, unless otherwise specially provided for in this act, there shall be levied, collected and paid upon all articles *imported from foreign countries or withdrawn for consumption*, and mentioned in the schedules herein contained, the rates of duty which are, by the schedules and paragraphs, respectively prescribed, namely."

Inasmuch as this statute was not passed until August 28, 1894, the section above quoted is to be construed as if it read "on and after the twenty-eighth day of August." U. S. v. Burr, 159 U. S. 78, 15 Sup. Ct. 1002.

The phrase, "withdrawn for consumption," is a technical one, well known in customs administration. When goods arrive here from abroad, they are entered either "for consumption" or "for warehouse." In the latter case they go into the public stores or a bonded warehouse, where they remain until the importer withdraws them for consumption, by one or more separate withdrawal entries. Articles,

then, which are "withdrawn for consumption," are articles which, un-til the time of such withdrawal, were in public store or bonded ware-house, and the phrase in the act as italicized above covers articles im-ported from foreign countries on and after the date named, and arti-cles imported before that date, but still remaining in public store or bonded warehouse on August 28, 1894.

Technically, as the appellant contends, the lemons in question were never in bond in any public store or warehouse or other place, and were never "withdrawn for consumption"; but none the less are they within the provisions of the section of the statute last quoted from. The question presented on this appeal has been practically deter-mined by the supreme court. The tariff act of 1883 contained in its tenth section the following provision:

"That all imported goods, wares and merchandise which may be in public stores or bonded warehouses on the day and year when this act shall go into effect, except as otherwise provided in this act, shall be subjected to no other duty upon the entry thereof for consumption than if the same were imported respectively after that day."

This is substantially the same provision as that contained in the act of 1894, viz. that articles imported before the new act went into effect, but remaining on that day in public stores or bonded ware-houses, shall be subjected to the new rate of duty. In Hartranft v. Oliver, 125 U. S. 525, 8 Sup. Ct. 958, it appeared that the bark con-taining the goods arrived before July 1, 1883, the date when the act went into effect, but on that date were still on board, the vessel remaining with unbroken hatches, and with a custom-house officer in charge of the same. The court says:

"The plain meaning of this section is that, though goods are imported be-fore the act takes effect, yet, if they are kept until after that period in a pub-lic store or bonded warehouse,—that is, in the custody and under the control of officers of the customs,—they shall be subjected only to the duties there-after leviable when they are entered for consumption. * * * The place in which the goods are thus kept is not the essential fact, but the custody of the government, and the consequent exclusion of control over them by the owner, which calls for the suspension of previous duties. There is mani-fest justice in the rule that goods thus withheld from the control of the owner or importer shall be subject only to such duties as are leviable by the law when he is at liberty to take possession of them. Ordinarily, goods in the custody and control of officers of the customs are placed in a public store or bonded warehouse, and thus the designation of the goods as thus placed is, in the legislation of congress, in effect a designation, and no more, of their being in such custody. But goods on board of a ship, in charge of a customhouse officer, preliminary to their removal to a public store or a bonded warehouse, and during the time necessary for that purpose, are in like cus-tody, and so are, within the spirit and intent of the law, subject only to such duties as are leviable when the goods are freed from such custody. So far as the government is concerned, they are in the same position as if tech-nically in a public store or bonded warehouse. When in either of those places, they cannot be removed without a permit from the collector. When on shipboard, in charge of a custom-house inspector, they are in the same condition, and cannot be removed without a like permit. * * * We are therefore of the opinion that, within the spirit and intent of the tenth sec-tion of the act of March 3, 1883, the goods were not chargeable with duties, while on board the bark, in the custody of an officer of the customs, at any greater rate than they would have been chargeable if in custody of such officer in a public store or bonded warehouse of the government, and that, therefore, duties were only leviable on the goods by the act which went into

effect on the 1st of July, 1883. The intent of the legislature is to be followed, even if not strictly within the letter of the statute."

We are unable to distinguish the case at bar from this decision. The decision of the circuit court is affirmed.