## UNITED STATES *v.* GROSSFELD (No. 216).[1]

DELIVERY PERMIT AS TO THE BULK AND A PART DESIGNATED FOR EXAMINATION.
The goods had been entered for consumption, 10 per cent of them designated for examination, a proper bond for the return of the delivered goods executed, a delivery permit as to those issued, all on August 5, 1909. On August 6 a delivery permit was issued for the goods designated and detained for examination: *Held*, the entire importation was dutiable under paragraph 250, tariff act of 1897.

United States Court of Customs Appeals, January 11, 1911.

APPEAL from a decision of the United States Board of General Appraisers, Abstract 23263 (T. D. 30601).

[Reversed.]

*D. Frank Lloyd*, Assistant Attorney General (*Chas. E. McNabb* on the brief), for the United States.
*Lester C. Childs* for appellants.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

BARBER, Judge, delivered the opinion of the court:

It is agreed that the appellee imported at Nogales, Ariz., on July 19, 1909, certain dried peas and forwarded the same without appraisement, under the act of June 10, 1880, to Chicago, at which place it arrived August 4, 1909. It was entered for consumption, 10 per cent of the importation was designated for examination, a proper bond for the return of the delivered packages or any part thereof if demanded within ten days was taken, pursuant to Revised Statutes 2899, and a delivery permit issued to the importer for the merchandise not designated for examination, all on the 5th day of August, 1909.

On the 6th day of August a delivery permit was issued for the goods held for examination. The merchandise was held dutiable at 30 cents per bushel under paragraph 250 of the tariff act of July 24, 1897. The importers claim that it should have been assessed at 25 cents per bushel under paragraph 262 of the act of August 5, 1909.

The appellant claims that the duties were paid on the 5th day of August, 1909, while the appellee contends that such duties were not paid, but the estimated duties were deposited upon that day. No oral evidence was taken.

The importers appealed to the Board of General Appraisers, who held that as to the 90 per cent of the importation for which a delivery permit was issued August 5 the duty was properly assessed, and to that extent overruled the protest, but as to the 10 per cent ordered for examination and for which a delivery permit was not issued until August 6, sustained the protest and held that duty thereon should be assessed under paragraph 262 of the act of 1909.

The protest contained the allegation in effect that no delivery of any part of the shipment was taken until after the act of August 5,

---

1 Reported in T. D. 31218 (20 Treas. Dec., 108).

1909, went into effect, and the importers claim that the goods were in continuous customs custody until August 6.

The merchandise is admittedly dutiable at the higher rate unless within the provisions of section 29 of the act of 1909, which reads:

That on and after the day when this act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to the duties imposed by this act and to no other duty, upon the entry or withdrawal thereof: *Provided,* That when duties are based upon the weight of merchandise deposited in any public or private bonded warehouse, said duties shall be levied and collected upon the weight of such merchandise at the time of its entry.

The act was approved August 5, 1909, and its final section provides that:

Unless otherwise herein provided this act shall take effect the day following its passage.

And it is agreed that, as relates to the issues in this case, the act took effect August 6.

It will be observed that section 29 refers to two classes of importations:

(1) All goods, wares, and merchandise previously imported for which no entry has been made.

And—

(2) All goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued.

The inquiry is, therefore, whether the importation in question falls within either of the two above classifications, as, if so, the protest should have been sustained, and, if not, the assessment of the collector was lawful.

As already appears, these goods were imported into this country on the 19th day of July, reached the port of delivery on the 4th day of August, and were entered for consumption on the 5th day of August, 1909.

We construe section 29 of the act of 1909, above quoted, as to the first class of goods therein provided for to mean that if no entry had been made before the 6th day of August, 1909, of goods previously imported they would be dutiable under the provisions of that act, but if the entry had been made, duty would be assessable under the act of 1897.

It being agreed that the goods were entered for consumption on the 5th day of August, they do not fall within the first classification if such an entry is one contemplated by that part of the section.

Without stopping to consider what the word "entry" may mean in some other connection, we think, for the purpose of the first part

of section 29 that when goods have been imported and the proper steps taken by the importer to enter the same for consumption, including the filing an entry paper as in this case, an entry thereof has been made so that they do not come within the classification first made in the section, as goods, etc., for which *no* entry has been made.

In United States *v.* Legg (105 Fed. Rep., 930) the court, in considering a question in some respects similar to the one before us, came to the conclusion that the word "entry" in section 33 of the act of 1897, of which section 29 is a reenactment, meant the document or entry paper filed or tendered by the importer.

Do the goods, although previously entered, fall within the second classification of the section?

Three conditions must be found to obtain before an affirmative answer to this question can be given: (1) The goods must be previously entered and under bond for warehousing, transportation, or any other purpose; (2) no duty paid; (3) no delivery permit issued.

Considering these prerequisites in their inverse order, it is clear as to 90 per cent of the goods these conditions do not *all* obtain, for as to so much of the importation a delivery permit was issued August 5, presumably at the importers' request. Their claim that the delivery of this 90 per cent was not taken until August 6 or later and that by reason thereof that part of the goods was in customs custody until August 6 or after is of no avail because the test under the statute is, had the delivery permit been issued, not had the delivery thereunder been taken, and the case as to 90 per cent of the importation might well be determined against the importers upon this fact alone. In addition, there is no evidence and no finding that delivery had not been taken under the permit.

We proceed, however, to consider the question as to whether duty had been paid, because its determination may affect the importers' claim that, as to the 10 per cent designated for examination, duty should be assessed under the act of 1909.

Relating to this question, the only statement contained in the record may be found in the protest and a letter of the collector of the port of Chicago to the Board of General Appraisers, dated October 13, 1909, submitting the protest, in which he says, relating to the importation:

It arrived here via Illinois Central Railroad on August 4 last and was entered for consumption and duties paid on August 5 last. Consumption entry No. 12991.

In their protest the importers say:

We respectfully protest against your decision of August 20, 1909, in assessing duty at the rate of 30 cents per bushel * * * on certain 257 bags of dried peas * * * under I. T. No. 76, entered and duties paid August 5, 1909, under consumption entry No. 12991. * * * We therefore respectfully request that you reliquidate the entry and refund us the duties collected in excess.

The importers insist that the sum so paid should be treated as estimated duties deposited with the collector of customs, and that, because the decision of the collector finally fixing the rate of duty at 30 cents per bushel was not rendered until August 20, any payment before that time can not be said to be a payment of duty. In other words, that the payment of duty, strictly speaking, can not be made until by final liquidation the correct amount of duties has been ascertained.

No authorities are cited upon this question nor has our attention been called to any statute which undertakes to fix the time when payment of duties as such can be said to be made as distinguished from a deposit of estimated duties, if such a distinction exists.

In a general way, as we understand the law, when merchandise is brought into this country and destined for consumption here, the importer may place the same in bond, as provided in the statute, in which event he is not required to pay duty at the time of importation, but payment is deferred until the goods are withdrawn for consumption.

If intended for immediate consumption, the importer may deliver the goods into the possession of the customs officials, who proceed to make necessary examination and appraisement and assess the duty which must be paid before the merchandise will be delivered to the importer. The customs officials may also, when goods are entered for consumption, at the request of the importer, designate certain and not less than 10 per cent thereof as a sample for examination and appraisement, and give the importer a delivery permit for the balance, at the same time taking from him what is called a 10-day bond for the return of the goods so delivered if demanded. This gives the importer a right to the immediate possession of the goods covered by the delivery permit, subject to the conditions of the bond. This practice, we understand, quite generally prevails and was adopted in this case. But before he can obtain the goods on the delivery permit the importer must pay the duty that is fixed at the time, tentatively or otherwise, upon the entire importation. If the amount is deemed by him to be erroneous, his remedy at the proper time is to protest and appeal, if necessary, and if consequent upon protest or appeal a different rate is fixed, final liquidation follows pursuant thereto. But whenever the entry for consumption is made eo instante a debt has accrued from the importer to the United States. Whatever he turns over to the proper officials in discharge of that debt, we hold, is a payment thereon, subject, of course, to a final adjustment or liquidation when all questions necessary to the exact ascertainment of the amount have been legally determined. It may turn out to be a payment pro tanto, or it may turn out to be an overpayment, but payment, nevertheless, we think it is. Manifestly it is paid in recog--

nition and discharge of the obligation that the law imposes upon the importer whenever he enters his importation for consumption.

In the case at bar, the importation, as the importers were presumed to know, was subject to a specific duty per bushel of either 30 cents under the act of 1897 or of 25 cents under the act of 1909. The obligation to pay it was fixed when the goods were entered for consumption. The 30 cents per bushel was paid, not as a deposit for duty, but as duty within the meaning of the section. In reaching this conclusion, we only arrive at the same understanding which the importers had when they filed their protest, in which they referred to the *duties as paid* by them August 5.

It appearing that duty on the entire importation was paid and a delivery permit for 90 per cent thereof issued on August 5, it follows that 90 per cent at least of these goods was dutiable under the act of 1897. As to the 10 per cent of the importation in the collector's hands for inspection, and for which no delivery permit was issued until August 6, it is urged that a different rule obtains. This contention was sustained by the Board of General Appraisers, who rested their decision upon the supposed authority of Hartranft *v.* Oliver (125 U. S., 525), and that case is relied upon here.

The statute before the Supreme Court in that case was there stated as follows:

That all imported goods, wares, and merchandise, which may be in public stores or bonded warehouses on the day and year when this act shall go into effect, except as otherwise provided for in this act, shall be subjected to no other duty upon the entry thereof for consumption than if the same were imported respectively after that day; and all goods, wares, and merchandise remaining in bonded warehouses on the day and year this act shall take effect, and upon which the duties shall have been paid, shall be entitled to a refund of the difference between the amount of duties paid and the amount of duties said goods, wares, and merchandise would be subject to if the same were imported respectively after that date.

The importation considered in that case reached the port of entry June 30, 1883, and on the same day was entered at the customhouse. It was not practicable on that day to remove the goods from the vessel into the public or bonded warehouse, and the next day, July 1, was Sunday, upon which day the act quoted, as to the importation, took effect, if at all. From the time the shipment arrived in port and entry thereof was made until after July 7, the vessel containing the merchandise remained with unbroken hatches and with a customhouse inspector in charge. The only question decided by the Supreme Court was that, under the circumstances of that case, the importation was not dutiable at any greater rate than it would have been if the goods had been in a public store or bonded warehouse on the 1st day of July, 1883. We are clear, in view of the facts in that case and the statute then under consideration, that the decision in the Hartranft case is not an authority in the case at bar. This 10 per cent sample

was held for inspection and appraisement until August 6. Entry thereof had been made and duty paid on the same the day before. It was not under bond for any purpose, but was a sample of the whole importation, which it was the duty and right of the customs officer to take and which the importers were bound to furnish. Its possession by the customs officers was but an incident to the importation, and although it sounds equitable to say that if the importers could not get possession of this part of their importation until the lower rate of duty attached, they should not be asked to pay the higher rate, yet the answer is that the statute does not make provision to that effect.

We hold that the entire importation was dutiable under the act of 1897, and therefore the decision of the board, that 10 per cent thereof was dutiable under the act of 1909, is *reversed*.