UNITED STATES *v.* DE VILLAMIL (No. 2359).[1]

DELIVERY OF MEAT DELAYED BY INSPECTION—WHAT LAW GOVERNS.

Meat was brought into the country and entry made before the emergency tariff act of 1921 went into effect. Delivery, however, was delayed by the inspection of the Bureau of Animal Industry of the Department of Agriculture provided for by paragraph 545, tariff act of 1913, and the Treasury regulations until after the· emergency tariff act went into effect. It was· entitled to entry free of duty under paragraph 545, tariff act of 1913, and not dutiable under paragraph 14 of the emergency act:

United States Court of Customs Appeals, June 9, 1924.

. APPEAL from Board of United States General Appraisers, G. A. 8712 (T. D. 39910).

[Affirmed.]

*William W. Hoppin*, Assistant Attorney General (*Marcus Higginbotham, jr.*, special attorney, of counsel), for the United States.

*Curie, Lane & Wallace* (*Samuel Isenschmid* of counsel) for appellee.

[Oral argument May 8, 1924, by Mr. Hoppin and Mr. Lane.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

SMITH, Judge, delivered the opinion of the court:

Meats which arrived at the port of San Juan, P. R., on May 11, 1921, and which were duly entered for consumption on the 26th of May, 1921, were assessed for duty by the collector of customs at 25 per cent ad valorem under the provisions of paragraph 14 of the

---

[1] T. D. 40267

emergency tariff act which paragraph in so far as pertinent reads as follows:

PAR. 14. Fresh or frozen beef, veal, mutton, lamb, and pork, 2 cents per pound. Meats of all kinds; prepared or preserved, not specially provided for herein, 25 per centum ad valorem. ·

The importer protested that the merchandise *was imported and entered* for consumption prior to the passage of the emergency tariff act and that it was therefore free of duty under the provisions of the free list and paragraph 545 of the tariff act of 1913, which are as follows:

FREE LIST.

That on and after the day following the passage of this act * * * the articles mentioned in the following paragraphs shall, when imported into the United States * * * be exempt from duty.

PAR. 545. * * * Meats of all kinds, prepared or preserved, not specially provided for in this section: *Provided, however,* That none of the foregoing meats shall be admitted into the United States unless the same * * * complies with the rules and regulations made by the Secretary of Agriculture * * *.

The Board of General Appraisers sustained the protest and the Government appealed.

The Government contends that they were not imported until June 14, 1921, the date on which they were delivered to the importer and released from customs custody and cites the case of the United States *v.* Cronkhite Co. (9 Ct. Cust. Appls. 129; T. D. 37980) in support of that contention. That case dealt with goods which came into the country on July 17, 1916, and *were entered for transportation in bond* to Jersey City, at which place they arrived on the morning of September 8, 1916, and were immediately entered for consumption as duty free under the act of 1913. The goods so transported in bond and entered for consumption were assessed for duty at 30 per cent ad valorem under the act of September 8, 1916. On that state of facts the majority opinion of this court held that as the goods were entered in bond and were in customs custody when the act of 1916 went into effect, they were not completely imported and were subject to the duties imposed by the collector. That decision was based on the provisions of paragraph Q, act of 1913, and particularly on the authority of Hartranft *v.* Oliver (125 U. S. 525); United States *v.* Goodsell (84 Fed. 439); and the Five Per Cent cases (6 Ct. Cust. Appls. 291; T. D. 35508).

The case of Hartranft *v.* Oliver, supra, held that goods which arrived at Philadelphia and were entered at the customhouse on the 30th of June, 1883, *would be deemed to be imported on that date* and would be subject to the duties prescribed by section 2504 of the Revised Statutes were it not for the fact that the importation was in public stores or bonded warehouse on the 1st of July, 1883, when

the duty provisions of the act of 1883 took effect. That ruling was based on sections 6 and 10 of the act of 1883, which expressly provided that all imported goods and merchandise in public stores or bonded warehouses on July 1, 1883, should be subjected to the duties prescribed by that act. On the 1st of July, 1883, the goods were as a matter of fact on board ship, but the Supreme Court held in effect that they were constructively in public stores or bonded warehouse within the intent and spirit of the law. It was plainly held that, regardless of the date of importation, section 10 of the act of 1883 was controlling in determining the dutiable status of the merchandise and that the mandate of that section should be respected. It was just as plainly held that if it were not for section 10 the goods would be subject to the duties in effect on the date of importation.

United States *v.* E. L. Goodsell Co. held that goods which were withdrawn from customs custody for consumption after the act of 1894 went into effect were subject to the duties prescribed by the latter act, by virtue of the following provision thereof:

On and after the first day of August, eighteen hundred and ninety-four * * * there shall be levied, collected, and paid upon all articles *imported from foreign countries or withdrawn for consumption* and mentioned in the schedules herein contained, the rates of duty which are, by the schedules and paragraphs, respectively prescribed. * * *. (Italics not quoted.)

The Five Per Cent cases dealt with goods which had been entered in bond for warehouse and the court expressly held that the provisions of subsection 7 of paragraph J and the provisions of paragraphs Q and S of the act of 1913 should be construed together and that goods under bond for warehouse were entitled to the 5 per cent discount allowed by subsection 7 of paragraph J.

Taking into account the issues involved in the Cronkhite case and the basis for the rulings in the Hartranft, Goodsell and Five Per Cent cases, we must hold that the Cronkhite decision is limited in scope to the dutiable status of goods entered in bond or for warehouse and *that as to such goods* importation can not be regarded as complete until they have been released from customs custody.

Paragraph Q of the act of 1913 provided in terms that on and after the day the act became effective all goods *previously imported*, but not entered and all goods previously entered without payment of duty under bond for warehousing, transportation, or for any other purpose, should be subject to the duties imposed by that act. Paragraph Q did not include goods in public stores or previously imported goods entered for consumption and in that respect materially differed from section 10 of the act of 1883 and the provision enacted in 1894.

Of necessity goods must be imported before they can be entered for consumption, before they are entered in bond for warehouse or transportation, and before they enter into customs custody, and that fact is plainly recognized by paragraph Q, Hartranft v. Oliver, and United States v. Goodsell. But if there was any doubt as to what constitutes importation, that doubt has been resolved by the Supreme Court of the United States, which held that importation must be given its ordinary and not its technical meaning and that—

importation * * * consists in bringing an article into a country from outside. If there be an actual bringing in, it is importation regardless of the mode in which it is effected. Entry through a customhouse is not of the essence of the act.—Cunard S. S. Co. v. Mellon (262 U. S. 100, at pp. 121, 122).

The goods involved in this appeal were entered for consumption on May 26, and, as they were duty-free goods, the importer would have been entitled to their delivery on the making of that entry, were it not for the fact that paragraph 545 and the Treasury regulations required their detention to enable the Bureau of Animal Industry of the Department of Agriculture to make an inspection of the meats.

The meats imported were not withheld from delivery because of any customs service which remained to be performed, and it can not be said, therefore, that the goods were in customs custody for customs purposes. They were withheld by the collector of customs acting for the Bureau of Animal Industry and were therefore in law and in fact in the custody of the Bureau of Animal Industry.

As the meats were imported on May 11, 1921, and entered for consumption on May 26, 1921, we must hold that their dutiable status is determined by the tariff act of 1913 in conformity with our decision in United States v. Grossfeld (1 Ct. Cust. Appls. 189, 190, 191; T. D. 31218). (See section 33, act of 1897, and section 29, act of 1909.)

The decision of the Board of General Appraisers is *affirmed.*

MARTIN, Presiding Judge, BLAND, Judge, and HATFIELD, Judge, concur in the conclusion reached but are not in accord with the views expressed as to what constitutes importation.