UNITED STATES *v.* McCULLOUGH SEED Co. (No. 2592) [1]

1. EVIDENCE—SUFFICIENCY TO OVERCOME PRESUMPTION FAVORING COLLECTOR.

A book in evidence, showing the arrival of merchandise on September 21, and identified by a witness as a book kept by him in the regular course of business, is sufficient to overcome the presumed correctness of the collector's finding that it arrived on September 22.

---

[1] T. D. 41181.

2. SAME—PRESUMPTION OF REGULARITY OF OFFICIAL ACTION.

Where the entry was filed and accepted on September 21, and the jurat dated September 22, with the evidence showing that the declaration was made and verified on the 21st, if at all, it will be presumed that it was made and verified on the 21st.

3. CONFLICT OF LAWS.

Where merchandise, free under the act of 1913, but dutiable under the act of 1922, arrived under an immediate transportation bond and was entered on September 21, 1922, permit of delivery being issued on September 22, importation was under the act of 1913. Section 319 of the act of 1922, providing that goods in bond at the time of its enactment should be subject to the act of 1922, has no application. *De Villamil* v. *United States*, 12 Ct. Cust. Appls. 255, T. D. 40267.

## United States Court of Customs Appeals, November 4, 1925

APPEAL from Board of United States General Appraisers, G. A. 8960 (T. D. 40752)

[Affirmed.]

*William W. Hoppin*, Assistant Attorney General (*Ralph Folks*, special attorney, of counsel), for the United States.
*De Witt W. Balch* for appellee.

[Oral argument Oct. 13, 1925, by Mr. Hoppin]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

Merchandise consisting of sweet clover seed was imported into the United States from Canada. It was entered in bond on September 16, 1922, at Detroit, Mich., for transportation to Cincinnati, Ohio. The collector's report in part is as follows:

\* \* \* The merchandise covered by this protest consists of sweet clover seed. Protest is made against the assessment of duty under the Tariff Act of 1922.

While entry was lodged September 21, 1922, it was not officially accepted until September 22, 1922, on which date the merchandise arrived and permit was signed.

In accordance with section 319, act of 1922, duty was properly assessed at the rate of 2¢ per pound under par. 761. \* \* \*

The following stipulation was entered into by counsel on the trial in the court below:

It is agreed between counsel that the Sharonville freight yards, north of the city of Cincinnati, Ohio, is the yard at which freight trains are broken up when coming into Cincinnati, Ohio, from the north and east over the C., C., C. & St. L. Railway Co.'s lines; that some of the cars are taken direct from the Sharonville yards to the siding in the city of Cincinnati, where they are to be unloaded, while other cars are taken to the Mill Creek bulk yards, which are within the city limits of Cincinnati, and shunted from there to the sidings at which they are to be unloaded; that the Sharonville freight yards are about 4 miles north of the city limits of the city of Cincinnati.

That the merchandise arrived at the Sharonville freight yards on September 20, 1922, is not denied.

The Government, however, contends that the port of Cincinnati does not extend beyond the boundaries of the city of Cincinnati; that there is no evidence in the record of the arrival of the merchandise within the city limits of the city of Cincinnati prior to September 22, 1922, on which date the Tariff Act of 1922 was in full force and effect; and that therefore the importation was dutiable as assessed under that act.

The appellee contends that the merchandise arrived within the city limits of the city of Cincinnati on September 21, 1922, and that the evidence fully supports its contention.

On the trial in the court below the appellee called as a witness one A. S. Loos, who testified in part as follows:

\*         \*         \*         \*         \*         \*         \*

Q. What is your occupation, Mr. Loos?—A. Clerk at the local freight office.

Q. Of what?—A. Of the Big Four.

Q. By the Big Four do you mean the C., C., C. & St. L. Railway Co.?—A. The C., C., C. & St. L. Railway Co.

Q. What was your occupation on September 21, 1922?—A. Clerk.

Q. Just state it in full, of what?—A. Clerk in the accounting department.

Q. Of what?—A. The C., C., C. & St. L. Railway.

Q. At that time, Mr. Loos, did you have anything to do with the handling of consular manifests?—A. Yes, sir.

Q. State to the court what your duties were in that connection at that time.— A. When they came into the office they came back to me, and I would hold them until the shipment arrived, and then I would mark them up for the customhouse. I would put them in a receipt book, and they would come up here and receipt for them and the book would come back.

Q. Do you remember of having made any entries in that book for the J. Charles McCullough Seed Co.?—A. I do.

Q. Have you that book with you?—A. Yes, sir [producing book].

Q. Now, Mr. Loos, is that a book the entries of which are made in the regular course of business?—A. Yes, sir.

Q. Were the entries in that book made contemporaneously; that is, at the same time as the facts occurred which the entries represent?  What I mean is this: Were the entries in that book made at the same time as the facts which the entries represent happened?—A. Yes.

Q. Did you make the entries in that book?—A. Yes, sir.

Q. Are there any entries in that book under date of September 21, 1922, for the J. Charles McCullough Seed Co.?—A. Yes, sir.

Q. Will you read that entry?—A. "September 21, 1922.  Order.  Notified Charles McCullough Seed Company, car N. Y. C. 223171—200 bags of grass seed, covered by I. T. 485."

\*         \*         \*         \*         \*         \*         \*

Q. Mr. Loos, I direct your attention to the date at the top of the McCullough Seed Company entry in that book.  There appears the date 9/21/22.  Will you tell me what that date means?—A. That is the date they received the manifest up here at the customhouse office.

By Mr. Bissell.

Q. That they received it?—A. Yes, sir; with the date that they received it.

Q. How do you know that they received it?—A. It was sent up here by messenger and they signed the name; the party that received it signed his name to the date.

Q. Is that in this book?—A. In this book here.

Q. What initials do you find—I will take that up on cross-examination?—A. It looks like A. B. to me.

\*          \*          \*          \*          \*          \*          \*

Mr. BISSELL. On identification by the deputy collector at this board, the Government admits that the initials attached to the book just offered in evidence are Mr. Bonekamp's initials

The Board of General Appraisers sustained the protest.

The book referred to by the witness is in evidence and has been carefully examined in connection with the quoted testimony. It seems clear to us that the witness has established that the merchandise arrived in the city of Cincinnati on September 21, 1922, and that the presumption of correctness of the finding of the collector, that the merchandise arrived on September 22, 1922, has been overcome. The collector reports that the consumption entry was filed on September 21, 1922. A witness for the appellee testified that he filed the entry with Mr. Bonekamp, one of the customs officials, on September 21, at about the noon hour; that the entry was accepted by that official and that he stated at that time that he would complete the entry by attaching his jurat to the declaration. The jurat was attached without further formality, but was dated September 22, 1922. It is fully established that the declaration was not made on that date. It was made, if at all, on the preceding day. The entry was accepted by the collector without change or amendment.

It is claimed by the Government that, from the testimony of this witness, it appears that he did not make a declaration under oath as required by law. It must be said that the testimony of the witness in this regard is very confusing. However, it does affirmatively appear that the entry was filed in accordance with the custom and practice in that office and that the entry was accepted in the form in which it was presented. We do not wish to be understood as condoning any practice which does not conform to the letter and spirit of the law. On the contrary, we assume that the entry would not have been accepted by the collector if the declaration attached thereto had not been duly verified.

The merchandise having arrived at the port of Cincinnati on September 21, 1922, a proper consumption entry having been duly filed on that date, and the merchandise being admittedly free of duty under the tariff act of 1913, and that act being in full force and effect on that date, the provisions of section 319 of the Tariff Act of 1922 could not be applicable to this merchandise. The importation being free of duty, the importer was entitled to delivery of the same on the

date of entry. *United States* v. *De Villamil*, 12 Ct. Cust. Appls. 255, T. D. 40267.

We are of the opinion that the merchandise was imported under the tariff act of 1913, and the judgment is acordingly *affirmed*.