(C. D. 1649)

WILBUR-ELLIS COMPANY *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 4, 1954)

*Lawrence & Tuttle* (*Charles F. Lawrence* of counsel) for the plaintiff.
*Warren E. Burger,* Assistant Attorney General (*Richard M. Kozinn,* trial attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

EKWALL, Judge: Plaintiff herein imported from Peru into the port of New Orleans, La., a shipment of canned bonito. The collector of customs at that port assessed duty thereon at the rate of 21 per centum ad valorem under paragraph 718 (a) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade (T. D. 51802) and the Presidential proclamation thereunder (T. D. 51834). It is claimed on behalf of the plaintiff that the bonito is properly dutiable at 15 per centum ad valorem under said paragraph, as modified, in accordance with the notification of the President to the Secretary of the Treasury as to new rates of duty in part I of schedule XX, annexed to the Torquay Protocol, T. D. 52739, effec-

tive as to articles entered, or withdrawn from warehouse, for consumption, on or after October 7, 1951, as published in T. D. 52827.

The case turns upon a determination of the question whether the instant importation was "entered, or withdrawn from warehouse, for consumption" on or after October 7, 1951.

The facts have been stipulated as follows:

Subject to approval of the court, it is hereby stipulated:

1) The merchandise involved in this case consists of canned bonito imported from Peru and entered at the port of New Orleans, where it was assessed with duty of 21 percent ad valorem as provided by paragraph 718 (a), Tariff Act of 1930 as modified by TD 51834. The merchandise was entered on September 20, 1951, on consumption entry DE 1398. Permit for delivery was issued September 20, 1951. The merchandise was released to the importer on October 5, 1951.

2) On November 1, 1951, the importer was notified by the New Orleans collector of customs, on customs form 6521, that samples of the importation had been withdrawn for analysis under the Federal Food, Drug and Cosmetic Act. This form 6521 further advised the importer that:

Said merchandise must be held intact pending the results of the analysis, of which notice will be given, and if the goods fail to comply with the requirements of said act as set forth, you are hereby notified that the said importation must be returned to the collector of customs for destruction, exportation, or other prescribed disposition within 3 months from date of the notice.

3) On November 1, 1951, the Federal Security Agency notified the importer that examination of the shipment had been completed "and the goods need not be further detained, insofar as section 801 of the Federal Food, Drug, and Cosmetic Act is concerned."

4) The report of the collector, together with the invoice and entry papers and all other accompanying official documents which were transmitted by him to this court in connection with this protest, may be admitted in evidence herein, and on this stipulation the case may be deemed to be submitted, time for briefs being allotted as follows: To plaintiff, 60 days after approval of this stipulation; to defendant, 60 days after service of plaintiff's brief.

The applicable provisions of the Federal Food, Drug, and Cosmetic Act referred to in the stipulation (U. S. C. title 21, § 381) are as follows:

**§ 381. Imports and exports—(a) Imports; examination and refusal of admission.**

The Secretary of the Treasury shall deliver to the Federal Security Administrator, upon his request, samples of food, drugs, devices, and cosmetics which are being imported or offered for import into the United States, giving notice thereof to the owner or consignee, who may appear before the Federal Security Administrator and have the right to introduce testimony. If it appears from the examination of such samples or otherwise that (1) such article has been manufactured, processed, or packed under insanitary conditions, or (2) such article is forbidden or, restricted in sale in the country in which it was produced or from which it was exported, or (3) such article is adulterated, misbranded, or in violation of section 355 of this title, then such article shall be refused admission, except as provided in subsection (b) of this section. * * *

**(b) Same; disposition of refused articles.**

Pending decision as to the admission of an article being imported or offered for import, the Secretary of the Treasury may authorize delivery of such article to the owner or consignee upon the execution by him of a good and sufficient bond

providing for the payment of such liquidated damages in the event of default as may be required pursuant to regulations of the Secretary of the Treasury. * * *

The customs regulations applicable to importations of food, etc., are found in Customs Regulations of 1943, as amended, articles 12.1–12.9. Article 12.6 thereof provides that liquidation "shall be suspended until it is determined whether admission of the merchandise into the United States is permitted under the law."

Plaintiff contends that in view of the foregoing laws and regulations the bonito here involved cannot be considered to have been "entered * * * for consumption" until such time as it was unconditionally released to the importer, because only then was the importer free to exercise dominion over it and to introduce it into the commerce of the United States. Further, that since the unconditional release of the merchandise did not take place until November 1, 1951, when the importer was notified by the Federal Security Agency that the goods need be detained no longer, the customs duty should have been determined as of that date. In support of this claim, plaintiff relies upon the holding of the court in the case of *United States* v. *Mussman & Shafer, Inc.*, 40 C. C. P. A. (Customs) 108, C. A. D. 506. That case involved an importation of plywood, and the court discussed the question of the meaning to be ascribed to the term "entered for consumption" and held that, in the absence of contrary statutory provision, goods are not "entered" for the purpose of determining the duties applicable thereto until the transaction is complete by the payment of duties and the issuance of an unconditional delivery permit passing control of the goods to the importer or owner. That holding was based upon a finding that, as the customs inspector was required to measure the plywood before releasing it, all customs functions requiring the temporary detention of the merchandise had not been completed and that the goods were not "entered for consumption" in that the delivery permit was not an instrument which, in a legal sense, passed unconditional control of the plywood from customs custody to the importer or owner.

Government counsel contends that the case cited is distinguishable for the reason that, there, the customs officials had not completed their required legal functions in that the goods had not been measured by a customs inspector, whereas, here, the goods were entered, estimated duties were paid, a release was given, and the actual physical release from customs custody to the importer was effected—all prior to the change in the law. In support of the Government's position that the custody must be that of customs, counsel in the brief cite the case of *United States* v. *De Villamil*, 12 Ct. Cust. Appls. 255, T. D. 40267. There, certain meat was entered for consumption prior to the effective date of the emergency tariff act of 1921. Delivery was delayed by an inspector connected with the Bureau of Animal

Industry of the Department of Agriculture, and the meat was released on the effective date of that act. In deciding that the meat was "entered" prior to the effective date of the emergency tariff act of 1921, the court, after citing and discussing the cases of *Hartranft* v. *Oliver*, 125 U. S. 525, and *United States* v. *Goodsell*, 84 Fed. 439, used the following language:

> Of necessity goods must be imported before they can be entered for consumption, before they are entered in bond for warehouse or transportation, and before they enter into customs custody, and that fact is plainly recognized by paragraph Q [of the Tariff Act of 1913], Hartranft v. Oliver, and United States v. Goodsell. But if there was any doubt as to what constitutes importation, that doubt has been resolved by the Supreme Court of the United States, which held that importation must be given its ordinary and not its technical meaning and that—
>
>> importation * * * consists in bringing an article into a country from outside. If there be an actual bringing in, it is importation regardless of the mode in which it is effected. Entry through a customhouse is not of the essence of the act.—Cunard S. S. Co. v. Mellon (262 U. S. 100, at pp. 121, 122).
>
> The goods involved in this appeal were entered for consumption on May 26, and, as they were duty-free goods, the importer would have been entitled to their delivery on the making of that entry, were it not for the fact that paragraph 545 and the Treasury regulations required their detention to enable the Bureau of Animal Industry of the Department of Agriculture to make an inspection of the meats.
>
> The meats imported were not withheld from delivery because of any customs service which remained to be performed, and it can not be said, therefore, that the goods were in customs custody for customs purposes. They were withheld by the collector of customs acting for the Bureau of Animal Industry and were therefore in law and in fact in the custody of the Bureau of Animal Industry.

In view of the facts here presented, it is clear that the bonito involved was not withheld from delivery because of any customs service which remained to be performed. It was ordered held intact under the terms of the Federal Food, Drug, and Cosmetic Act, *supra*. So far as the record shows, the delivery permit releasing the goods to the importer as of October 5, 1951, was unconditional. We, therefore, hold that the assessment by the collector at the rate of 21 per centum ad valorem under paragraph 718 (a), *supra*, as modified, was in accordance with law. The protest is overruled.

Judgment will be entered accordingly in favor of the defendant.