UNITED STATES *v.* ESTATE OF BOSHELL (No. 2770)[1]

IMPORTATION, TIME OF—CONSTRUCTION, SECTION 308, TARIFF ACT OF 1922—
GOODS IMPORTED FOR EXPERIMENTAL PURPOSES.

Section 308, Tariff Act of 1922, relieves from duty articles imported for experimental purposes, if exported "within six months from the date of importation." The word importation is used in its ordinary sense—the bringing of the merchandise within the limits of a port of entry with the intention to there unlade. "The date of importation" is not the date of entry or of the delivery of the merchandise to the importer.

United States Court of Customs Appeals, November 19, 1922

APPEAL from Board of United States General Appraisers, Abstract 51392

[Reversed.]

*Charles D. Lawrence,* Assistant Attorney General (*Fred J. Carter* and *Marcus Higginbotham,* special attorneys), for the United States.
*John Giblon Duffy* for appellee.

[Oral argument October 4, 1926, by Mr. Carter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

Section 308 of the Tariff Act of 1922 contains the following provisions:

That the following articles, when not imported for sale or for sale on approval, may be admitted into the United States under such rules and regulations as the Secretary of the Treasury may prescribe, without the payment of duty under bond for their exportation within six months from the date of importation: * * *

(5) Articles intended solely for experimental purposes, and upon satisfactory proof to the Secretary that any such article has been destroyed because of its use for experimental purposes such bond may be canceled without the payment of duty; * * *

The section also grants to other named articles, not necessary to enumerate here, a similar privilege.

The relevant facts are that the Government of the Republic of Colombia shipped to Doctor Boshell, its consul general at New York, four rifles that concededly were for experimental purposes within the meaning of paragraph (5) above quoted. The vessel bringing these rifles arrived within the limits of the port of New York October 18, 1923. The rifles were entered at the customhouse there December 7, 1923, and on or about the same time delivered to Doctor Boshell under a six months' bond. The bond itself is not before us, but the argument of counsel proceeds upon the theory and we assume that it was conditioned upon the exportation of the merchandise within six months from the date of importation. The rifles were not exported within six months from October 18, 1923, but on or about May 23, 1924, and within six months from the date of entry, application was

[1] T. D. 41884.

made for permission to export them without payment of duty. The collector at New York referred the question to the Treasury Department which held that—

> The date of importation is the date of arrival within the limits of the port with intent to unlade, and as it appears that the articles in question were not exported within six months from the date of arrival (October 18, 1923) they became subject to the payment of duty. While it appears that the failure to export within the required six months' period was due to the illness of the consul general and to a misunderstanding as to what constituted the date of importation, the department is without authority to take these facts into consideration with a view to affording relief from the payment of duty, and the application must accordingly be denied.

Acting in accordance therewith the collector assessed duty on the rifles under paragraph 365 of the act of 1922.

If dutiable, no claim is made that the assessment was wrong.

Apparently, the rifles were actually exported within six months from the date of entry.

Protest was duly filed against the collector's action on the ground that the merchandise was entitled to exportation without the payment of duty at any time within six months from the date of entry.

The Board of General Appraisers, now the United States Customs Court, sustained the protest on the authority of its decision rendered November 29, 1922, in *Meadows, Wye & Co.* v. *United States*, T. D. 39342, G. A. 8584. In the case at bar the board did not discuss the issue. In the *Meadows, Wye & Co.* case, subsection 4 of paragraph J of Section IV of the tariff act of 1913 was under consideration. Said subsection 4 provided that articles intended solely for experimental purposes—

> may be admitted without the payment of duty under bond for their exportation within six months from the date of importation.

In that case the board expressed the opinion that—

> The policy of this law was to permit articles of the character of the merchandise involved in this case to be brought into the United States for experimental purposes without the payment of duty, in order that commerce and business and the country's general well-being might be advanced and improved thereby.

It pointed out in substance that it might happen that the entry of the merchandise, after the date it was brought into a port in the United States, might be so delayed that an importer would not get possession thereof until some part or, possibly, all of the six months from that date had elapsed and, therefore, would be partially or wholly deprived of the privilege of said subsection. It held that the word "importation" in said subsection 4 should be construed in view of such national policy and concluded that—

> it was the clear intent and purpose of Congress to give the privilege of six months in which to experiment with and test articles like those which are the subject of this protest.

In other words, it held that the word "importation" in subsection 4 should be construed to mean the delivery of the merchandise by the customs authorities to importer.

Counsel for the importer in the case before us relies chiefly upon the authority of the *Meadows, Wye & Co.* case, and makes the reasoning of the board therein his argument here. The Government contends that the word "importation" in section 308 must be held to mean the bringing of the merchandise within the limits of a port of entry with the intention to there unlade, and not the date of the entry or of the delivery of the merchandise to importer.

It is clear that in the case at bar the board held that the statute now before us should be construed as if it provided that articles intended solely for experimental purposes should be admitted without the payment of duty under bond for their exportation *within six months from the date of entry or of delivery thereof to importer*, instead of, as the statute provides, *within six months from the date of importation.*

We are unable to agree with this interpretation of the statute.

The common ordinary meaning of the word "import" is to bring in. Imported merchandise is merchandise that has been brought within the limits of a port of entry from a foreign country with intention to unlade, and the word "importation" as used in tariff statutes, unless otherwise limited, means merchandise to which that condition or status has attached.

We refer to some of the many authorities upon this subject:

United States v. *Vowell* (5 Cranch) 9 U. S. 368; *Arnold et al.* v. *United States* (9 Cranch) 13 U. S. 103, 119; *Meredith* v. *United States* (13 Peters) 38 U. S. 486, 493; *Marriott* v. *Brune* (9 Howard) 50 U. S. 619, 631; *Lawder* v. *Stone*, 187 U. S. 281; *Cunard S. S. Co.* v. *Mellon,* 262 U. S. 100, 122; *The Mary*, 16 Fed. Cases, 932; *Perots et al.* v. *United States*, 19 Fed. Cases, 258; *United States* v. *Lyman*, 26 Fed. Cases, 1024, 1031; *Kidd* v. *Flagler*, 54 Fed. Rep. 367; *The Conqueror,* 49 Fed. Rep. 99, 102; *Franklin Sugar Refining Co.* v. *United States*, 178 Fed. Rep. 743, 747.

There is also a line of decisions establishing that Congress may, by statute designed to operate retrospectively, provide that merchandise already imported shall be subjected to the duties imposed by the retrospective statute, if the merchandise is in customs custody at the time such statute takes effect.

*Fabbri* v. *Murphy*, 95 U. S. 191; *Hartranft* v. *Oliver*, 125 U. S. 525; *United States* v. *Burr*, 159 U. S. 78; *United States* v. *Goodsell Co.* 84 Fed. 439; *Mosle* v. *Bidwell*, 130 Fed. 334.

In this connection it may be observed that the case of *United States* v. *Benson*, 24 Fed. Cases 1112, cited and much relied upon by the board in its decision in the *Meadows, Wye & Co.* case, is clearly in the class with those we have last cited.

This whole question has been frequently considered by this court. Among the cases are:

*The Five Per Cent Cases*, 6 Ct. Cust. Appls. 291, 320; *United States* v. *Cronkhite Co.*, 9 Ct. Cust. Appls. 129; *Constance* v. *United States*, 11 Ct. Cust. Appls. 435; *May Co.* v. *United States*, 12 Ct. Cust. Appls. 266; *Diana* v. *United States*, 12 Ct. Cust. Appls. 290; *Sterling Bronze Co.* v. *United States*, 12 Ct. Cust. Appls. 338.

Therein it is pointed out that the invoked statutes declared that the duties provided for therein should be applicable to merchandise *already imported* but still in customs custody. And in this connection it has been said that for the purposes of *such statutes* importation was not completed until entry was made, but we know of no case where an importation, as that term is commonly used, has been held incomplete because entry at a customhouse had not been made.

In *United States* v. *Lyman, supra*, it was said:

And the importation is complete as soon as the goods are brought within any port with the intention of being unladen or sold there.

In *Perots et al.* v. *United States, supra*, the court declared:

There is no statute of the United States, nor any general principle of law, which requires an entry to be made in order to render the importation complete.

See also *Franklin Sugar Refining Co.* v. *United States, supra*.

In *Cunard S. S. Co.* v. *Mellon, supra*, the Supreme Court, discussing the ordinary meaning of importation, said that it—

consists in bringing an article into a country from the outside. If there be an actual bringing in it is an importation regardless of the mode in which it is effected. Entry through a custom house is not of the essence of the act.

Section 308 grants the privilege of admission into the United States to merchandise otherwise dutiable, without the concurrent payment of duty, if it is not imported for sale or for sale on approval, provided a bond is given for its exportation within six months from the date of importation.

There is nothing to indicate that the word "importation" was not used in its ordinary meaning. Neither is there anything to indicate that Congress intended that the six months should begin to run from the date of entry or from the date the importation was actually delivered by customs officials to the importer. It is peculiarly within the province of the legislative body to say when, under what circumstances, and for how long a time, if any, it will allow dutiable merchandise to be turned over to importer without payment of duty, at the expiration of which period of grace the duty must be paid, if the merchandise still remains here. If the time allowed is insufficient for the importer's purpose, he may pay the duty and have all the time there is to experiment therewith.

Congress might easily have said that the bond should be given for exportation within six months from the date of entry or from the

date the merchandise was delivered to importer. It said neither, and, until it does, it must be held that the six months' period provided in the section begins to run from the date the imported merchandise is brought within the limits of a port of entry with intent to unlade.

In this case the merchandise was not "destroyed because of its use for experimental purposes," in which case section 308 provides that the bond may be canceled without the payment of duty, and it was not exported within the time provided in the section.

The judgment below is therefore *reversed.*