(C. D. 435)

AMERICAN MAIL LINE v. UNITED STATES

United States Customs Court, Second Division

(Decided February 17, 1941)

*Bogle, Bogle & Gales and Grosscup, Morrow & Ambler* for the plaintiff.
*Charles D. Lawrence,* Acting Assistant Attorney General (*J. J. McDermott* and *Richard F. Weeks,* special attorneys), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of Seattle, brought to recover certain customs duties alleged to be improperly exacted upon a particular importation consisting of a steering engine and accessories. Duty was levied thereon at the rate of 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as a machine and parts thereof not specially provided for. It is claimed that said merchandise must be deemed a nonimportation and as such free of duty as not subject to the tariff law.

There is no dispute in regard to the facts which are substantially as follows:

On October 14, 1934, the Seattle office of the American Mail Line, Ltd, the plaintiff herein, received a radiogram, marked exhibit 1 herein, from the master of the steamship *Grays Harbor,* which message reads in part as follows:

STEERING ENGINE COMPLETELY DEMOLISHED REQUIRE NEW ONE STOP UNABLE USE RELIEVING TACKLE TOO DANGEROUS AT PRESENT VESSEL LABORING HEAVILY IN TROUGH OF SEA WHOLE WSW GALE TREMENDOUS SEAS * * *.

Thereupon the Seattle office arranged to borrow a steering engine from the Alaska Steamship Co., with the understanding that if it were used it would be paid for and, if not, it would be returned. The equipment consisted of 1 steering engine, 1 screw assembly, 1 pedestal, 2 arms, 1 box telemotor, and 1 box parts; the telemotor being of American manufacture and the balance of foreign manufacture. Arrangements were promptly made to ship the equipment to Yokohama on the steamship *President McKinley* which sailed from Seattle on October 27, 1934. The collector of customs was told of the casualty and emergency and was requested to inspect the shipment before it left

Seattle, and an application for a certificate (Customs Form 1455) was tendered. The collector, however, caused the shipment to be inspected but refused to sign the certificate.

At the time the shipment left Seattle the plaintiff did not know whether or not the equipment would be needed, as it had not yet received the results of a survey which was being made of the damage. The local office kept in constant touch with the company's agents in the Orient and, on October 27, 1934, received word that the damaged equipment could be repaired, and requested orders. Thereupon the local office directed that the repairs be made and the new equipment be returned on the steamship *President Jackson.*

On October 29, 1934, 2 days after the departure of the machinery from the United States and while it was on its way to its destination, a letter (exhibit 7) was written to the collector of customs at Seattle advising him that the equipment was not going to be used and that it would be returned to the United States. The shipment arrived in Yokohama on November 9, 1934, and was immediately placed in the custody of the Imperial Japanese Customs, as evidenced by exhibit 5 herein, where it remained until it was shipped back on the steamship *President Jackson* which left Yokohama on November 17, 1934, arriving at Seattle on November 27, 1934, at which port, after being duly entered, the equipment was returned to the Alaska Steamship Co.

The portion of the equipment which was of American manufacture was admitted free of duty. On the balance, which was of foreign manufacture, duty was levied at the rate of 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as machines and parts not specially provided for.

There being no evidence to the contrary, the collector's classification of the merchandise under said paragraph 372 must stand, unless the articles are held to be a nonimportation and as such not subject to the tariff law. That is the issue here presented.

Section 1 of the Tariff Act of 1930, which occurs at the beginning of the dutiable schedule of merchandise, reads:

That on and after the day following the passage of this Act, except as otherwise specially provided for in this Act, there shall be levied, collected, and paid upon all articles when imported from any foreign country into the United States or into any of its possessions (except the Philippine Islands, the Virgin Islands, American Samoa, and the Island of Guam) the rates of duty which are prescribed by the schedules and paragraphs of the dutiable list of this title, namely: * * *.

On the uncontradicted facts herein counsel for the plaintiff, in their brief filed herein, contend that the merchandise at bar is not an importation in the tariff sense, because it was never exported to a foreign country and therefore cannot be said to have been imported

therefrom into the United States. In support of this contention they cite the cases of *Swan & Finch Co.* v. *United States,* 190 U. S. 143, and *F. F. G. Harper Co.* v. *United States,* T. D. 46700, 64 Treas. Dec. 429. But we have carefully read the cited cases and in our opinion they may not be deemed to be here controlling, particularly in view of the long line of subsequent decisions defining what constitutes an importation.

In *Cunard Steamship Co., Limited, et al.* v. *Mellon,* 262 U. S. 100, the United States Supreme Court had under consideration the national prohibition act and defined the meaning of the word "importation" therein as follows: "Importation in a like sense, consists in bringing an article into a country from the outside. If there be an actual bringing in it is importation regardless of the mode in which it is effected. Entry through a customhouse is not of the essence of the act."

In the instant case it is uncontradicted that the merchandise at bar did enter the United States through the port of Seattle from Yokohama, Japan. Section 1 of the Tariff Act of 1930, as hereinbefore stated, provides that all such merchandise shall be subject to duty, except as otherwise specially provided for. We have been unable to find any provision in the Tariff Act of 1930 that would except this particular merchandise from the dutiable provisions thereof.

In *United States* v. *Estate of Boshell,* 14 Ct. Cust. Appls. 273, T. D. 41884, the Court of Customs Appeals said:

The common ordinary meaning of the word "import" is to bring in. Imported merchandise is merchandise that has been brought within the limits of a port of entry from a foreign country with intention to unlade, and the word "importation" as used in tariff statutes, unless otherwise limited, means merchandise to which that condition or status has attached.

See also *United States* v. *Field & Co.,* 14 Ct. Cust. Appls. 406, T. D. 42052; and *Henry Hollander Co.* v. *United States,* 22 C. C. P. A. 645, T. D. 47632.

Hence it follows that any merchandise brought into the United States with the intention to unlade constitutes an importation within the meaning of section 1, Tariff Act of 1930.

Webster's New International Dictionary defines the word "unlade" as follows:

Unlade. 1. To take the load from; to take out the cargo of; as to *unlade* a ship. 2. To unload; to remove, or to have removed, as a load or a burden; to discharge.

In the instant case it is conceded that the merchandise at bar was brought to the United States from a foreign port and was actually unloaded and taken from the steamship *President Jackson* at the port of Seattle. The fact that the merchandise in question was not

intended to be sold or to be mingled with and become a part of the commerce of the United States is immaterial. *Agency Canadian Car & Foundry Co.* v. *United States,* 10 Ct. Cust. Appls. 172, T. D. 38547.

The case of *Moral & Co.* v. *United States,* T. D. 29260, G. A. 6805, 16 Treas. Dec. 167, involved certain machinery brought into the United States from a foreign country to repair a foreign vessel lying disabled in an American port. In holding the said machinery to be dutiable this court (then the Board of General Appraisers) said:

> Every commodity having a value that is brought within the limits of the United States is imported merchandise within the meaning of the customs law. *United States* v. *Boyd* (24 Fed. Rep., 692); James' case, G. A. 4869 (T. D. 22828). *All imported goods not specifically exempted therefrom are subject to duty under the tariff laws of the United States.* [Italics ours.]

See, also, *Patterson Steamships (Ltd.)* v. *United States,* T. D. 43685, 56 Treas. Dec. 492.

In *Page & Jones* v. *United States,* 26 C. C. P. A. 124, C. A. D. 5, the United States Court of Customs and Patent Appeals had under consideration the tariff status of a certain steam turbine engine which had been removed from a disabled British vessel in the port of Mobile, Ala., and shipped to England for repairs, and then returned to Mobile and reinstalled in the same vessel. Although there was no intention on the part of the owner either to export to England or to import it into the United States for the purpose of entering into the commerce of either country, nevertheless the engine in question was held to be an importation and as such properly dutiable under the *eo nomine* provision therefor in the Tariff Act of 1930. In its decision, which affirmed a decision of this court, the appellate court said:

> It will be noticed from the opinion of the trial court that its action in overruling the protest was with reluctance. It appreciated, as we do, the seeming hardship that has been inflicted upon the importers and that it is unfortunate that they were required to pay customs duty amounting to $3,827.20 for goods which never went into the commerce of this country and which, as far as this record shows, were never intended to enter such commerce. It is regrettable that, as far as appears from the instant record, there was no remedy found in the Tariff Act of 1930 for the hardship complained of. Providing such a remedy is the province of the legislature and not of the courts.

So also in the instant case this court unfortunately is powerless under the law to grant any relief in the premises, and hence it follows that all claims of the plaintiff must be and they hereby are overruled and the decision of the collector is affirmed.

Judgment will be rendered accordingly.