(C. D. 726)

AMERICAN ASKANIA CORPORATION *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided February 4, 1943)

*Philip Stein* for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*John J. McDermott, Charles J. Miville, Daniel G. McGrath,* and *Joseph B. Brady,* special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

EKWALL, Judge: The plaintiff herein imported two geophysical instruments described on the invoice as "1 recording field-balance in box" and "1 integrometer with accessories." They were entered at the port of Houston, Tex., and were released without payment of duty under the provisions of section 308 (4) of the Tariff Act of 1930, which provides, insofar as pertinent, as follows:

SEC. 308.  TEMPORARY FREE IMPORTATION UNDER BOND FOR EXPORTATION.

The following articles, when not imported for sale or for sale on approval, may be admitted into the United States under such rules and regulations as the Secretary of the Treasury may prescribe, without the payment of duty, under bond for their exportation within six months from the date of importation, which period may, in the discretion of the Secretary of the Treasury (whether such articles are imported before or after this section becomes effective), be extended, upon application, for a further period not to exceed six months:

\* \* \* \* \* \* \*

(4)  Articles intended solely for experimental purposes, and upon satisfactory proof to the Secretary that any such article has been destroyed because of its use for experimental purposes such bond may be canceled without the payment of duty;

\* \* \* \* \* \* \*

Under authority of the statute the Secretary of the Treasury promulgated regulations providing for the entry of such articles and for the extension of the bonds and their cancelation. We quote the pertinent portions of such regulations as follows:

Customs Regulations of 1931, as amended and in effect on the date of importation.

Art. 428.  Entry—Bond.—(a) The entry of articles imported under bond (or cash deposit in lieu thereof) for exportation within six months under any of the above-mentioned provisions of law, shall definitely show that fact and state the particular provision of law under which free entry is claimed, and shall be made on customs Form 7501.  \* \* \*.

\* \* \* \* \* \* \*

(e) Upon completion of the entry and the filing of the bond, or deposit of cash in lieu thereof, the articles may be released to the importer. Upon compliance with the conditions of the bond or at the expiration of the bonded period, the entry shall be liquidated free of duty, but with respect to any articles covered by the entry which are not disposed of in accordance with the conditions of the bond, the duty which would have accrued on such articles had they been entered for

consumption and not in bond, shall be ascertained in the usual manner and noted on the entry for the purpose of computing and assessing liquidated damages. (T. D. 47042.)

Art. 434. Extension of bonds.—Bonds given for exportation under paragraph 1607 can not be extended. All other special 6-months' bonds may be extended for a further period of 6 months upon written application. Such application must set forth the reason for requesting the extension and should be filed with the collector who should forward the same to the Bureau of Customs with his recommendation.

\* \* \* \* \* \* \*

Art. 436. Cancellation of bonds.—(a) Bonds taken pursuant to these provisions of law may be canceled in the manner prescribed in article 1252, except in the case of articles admitted under section 308 (4) destroyed in making experiments.

\* \* \* \* \* \* \*

(e) Should any of the articles be not exported or destroyed in accordance with these regulations within the six-months' period or within any lawful extension thereof, a demand shall be made under the bond for the payment of liquidated damages in a sum equal to the duties which would have accrued on the merchandise not exported. \* \* \* . (T. D. 46628.)

The instruments were imported on March 4, 1935, and entered on March 15, of the same year at the port of Houston, Tex. The notation on the entry states:

Entered for Experimental and Demonstration Purposes Under Six Months Bond, Sec. 308, TA 1930.

On August 21, 1935, the importer filed an application for an extension of the bonded period for another 6 months. The Secretary of the Treasury refused to extend the bonded period, and on December 21, 1935, rendered a finding to that effect. Thereupon the collector liquidated the entry on the basis of 40 per centum ad valorem under paragraph 360 of the Tariff Act of 1930.

Against this action on the part of the collector the plaintiff filed the protest before us claiming that the instruments had been improperly classified and further that the refusal on the part of the Government officials to extend the bonded period was an abuse of discretion on the part of the Secretary of the Treasury, and that the instruments should not have been taxed because exportation within the term of the bond was prevented due to the fact that the importer did not receive a reply to his request for an extension until 3 months subsequent to the time of expiration of the bond.

The Government moved to dismiss the protest on the ground that "there has been no compliance with the statute, section 514," of the Tariff Act of 1930. This point was not argued in the brief filed on behalf of the Government. It is noted that the protest makes a claim "That if said merchandise is dutiable wholly or in part, it is dutiable only at 27½% ad valorem under paragraph 372, Tariff Act of 1930," and a further claim that the importer was illegally "refused release or delivery of the merchandise upon the payment of duty under para-

graph 368." The claim for classification under paragraph 372, *supra*, was abandoned at the hearing but the claim against a refusal on the part of the collector to deliver merchandise upon the payment of duty is clearly justiciable under said section 514. We therefore deny the motion to dismiss the protest.

The first witness on behalf of the plaintiff, a professor of geophysics at the Colorado School of Mines, described the recording field balance or magnetometer and also explained its use in detail. This testimony was produced for the purpose, as stated by counsel for the plaintiff, of showing that the articles were not imported for any use except demonstration, or as models from which orders might be taken, or for experimental purposes, and for the further purpose of proving that additional time was necessary beyond the 6 months to experiment with the magnetometer. In the course of the testimony of this witness it developed that he had not used the magnetometer here involved but had used others that differed from this in that their photographic mechanism was separate, whereas in the one now before us such mechanism is an integral part of the instrument.

In regard to the integrometer the witness stated that he had seen this type of instrument under construction in the factory in the country of exportation, but that the one now before the court is a development of the one he saw. He described the function of the integrometer, which is used in oil exploration, and stated that he operated this particular one at the convention at which it was exhibited. Further he stated that his demonstration of the instrument at the convention was not sufficient to indicate to him whether or not it could be used practically or commercially, because it would require between half a year and a year to try out the instrument on geological forms and structures in various areas of the country. The witness also stated that neither of these instruments could be utilized, practically and commercially, for the use for which they had been demonstrated at the convention without experimentation, which experimentation would, if complete, take between 6 months and a year.

The second witness on behalf of the plaintiff, Mr. Stubbe, vice president and manager of the importing corporation, testified that the instruments were imported for the purpose of experimentation and demonstration at a convention of geologists to be held at Wichita, Kans.; that the principal purpose in bringing the merchandise into this country was to demonstrate the equipment at the convention; that it was not imported for the purpose of sale and was never offered for sale. It was exhibited at the convention but considerably more experimentation would have been necessary to prove the suitability of the instruments for use in this country. The witness further stated that the application for a renewal of the bond was made prior

to the expiration of the 6 months' period and the refusal of such request was received after the expiration date, at which time the instruments were in the custody of the plaintiff in the United States. Subsequently they were exported. On cross-examination this witness stated that he is engaged in the geophysical instrument business, buying and selling and servicing such instruments. He was interrogated in regard to his recollection of a conversation with a Mr. Williams, a Government agent, but stated that he did not tell Mr. Williams that he had tried to dispose of these particular instruments in suit.

On redirect examination the witness stated that it was not possible to complete the experimentations on these instruments within the 6-months' period and for that reason the extension was requested.

The Government witness, Mr. Williams, customs agent in charge at the port of Galveston at the time of this importation, testified that at the request of the collector he conducted an investigation into the matter of the entry here involved during the course of which he interviewed several persons, among them Mr. Stubbe, whose testimony is summarized above. Mr. Williams stated that Mr. Stubbe produced the two instruments here involved for his inspection and explained their mechanisms and functions. Mr. Stubbe stated to this witness that he had demonstrated the two instruments at the meeting of the American Geophysical Society at Wichita, Kans., for the purpose of selling them. In answer to a question as to whether he could recall any particular person to whom he had attempted to sell the imported machines, Mr. Stubbe replied that he could recall only that Mr. Emerick had examined them very carefully and was greatly interested in them and might possibly buy them at some time in the future, and that he had demonstrated the recording magnetometer to the chief geophysicist for the Humble Oil & Refining Co. who appeared interested in the instrument and might possibly buy it; that he had tried to sell it to that company and had hoped to make a sale. In regard to the integrometer Mr. Stubbe stated to the witness that he had demonstrated that instrument to a Dr. Goldstone of the Shell Petroleum Co. who was greatly interested in it, but at the time the work of the geophysical department of the Houston office of that concern apparently did not justify the expenditure but that if the work in Houston increased Dr. Goldstone "appeared as if he might buy the instrument." Mr. Stubbe also stated to this witness that he had demonstrated the machines to the geophysical department of the Gulf Refining Co. in Houston but did not mention the names of any particular individuals. The witness quoted Mr. Stubbe's statement as to the experimental nature of the instruments as follows:

These instruments are experimental to the extent that we must determine if American geophysicists can use them economically and will buy them. If we

cannot sell them we must return them to Germany. There are no new principles involved. Our purpose is to sell them, and if we don't sell them they will have to be returned.

This witness further testified that he had interviewed Dr. Blau and Dr. Goldstone immediately after his interview with Mr. Stubbe, and that Dr. Blau had stated that Mr. Stubbe had offered him the magnetometer and Dr. Goldstone told him that he was offered the integrometer for sale.

Mr. Stubbe was recalled and testified that he had not offered these identical instruments for sale. He admitted that he had shown Mr. Williams, the Government agent, these identical machines, but he could not recall whether he actually discussed the possibility of selling instruments of this particular type with any persons who visited their booth at the meeting in Wichita; that while he had discussed these identical instruments with both Dr. Blau and Dr. Goldstone he did not offer either of them for sale to those gentlemen, at any time, and in regard to his discussions with Dr. Goldstone he "was trying to sell him an instrument of this particular type after the experimentations had been performed for this equipment."

In view of this conflicting evidence as to whether or not these instruments were intended for sale we think that the plaintiff has failed to sustain the burden of proof. The fact that instruments of this character had to be adjusted to meet climatic and geological conditions would not, in the opinion of the court, militate against their sale. It would seem to the court that almost any instrument of such a character would have to undergo adjustment or calibration.

In the brief filed on behalf of the plaintiff it is contended that application for the extension of the term of the bond was made almost 4 weeks prior to the expiration date. This would seem to be an error, being based upon a wrong premise, i. e., that the 6-months' time is to be computed from the date of entry. The statute, section 308, *supra*, provides that the articles therein enumerated may be admitted "without the payment of duty, under bond for their exportation within six months from the date of importation." It was held in *United States* v. *Estate of Boshell*, 14 Ct. Cust. Appls. 273, T. D. 41884, that the "date of importation" as used in section 308 of the Tariff Act of 1922, is not the date of entry or of delivery of the merchandise to the importer but the date when the "merchandise is brought within the limits of a port of entry with intent to unlade." The changes made in said section as it was enacted in the Tariff Act of 1930 are not material insofar as the construction placed upon this phrase is concerned. In the case before us the importation was made on March 4, 1935, and the bonded period would therefore have expired on September 4, 1935. Plaintiff's request for extension was submitted on August 21, 1935, which was 10 working days before

the period of expiration of the bond. In view of the fact that the customs regulations provide that requests for extension of the bonded period in such cases must be forwarded to the Bureau of Customs, it would seem that a period of 10 working days prior to the time of expiration would not necessarily constitute a timely submission of the request for an extension. However, we do not deem it necessary to decide this point.

Even if it be conceded that this court has jurisdiction over the refusal of the Secretary of the Treasury to grant an extension of the bond in this case, upon the record as made we fail to find evidence of an abuse of discretion on the part of that official.

Section 308, *supra*, is the grant of a privilege and we think the language of the Court of Customs and Patent Appeals in the case of *Pelz-Greenstein Co.* v. *United States*, 17 C. C. P. A. (Customs) 305 at 308 (T. D. 43718), is applicable here. In that case the court speaking of section 308, *supra*, and section 313 (which pertained to drawback) said:

\* \* \*. The generous privileges granted by Congress in the two sections, supra, were granted for special purposes, and, for the importer to be entitled to these privileges, he must bring himself not only within the letter but within the spirit of the provisions, and in determining whether or not he has done so, as applied to these two particular sections, it is the settled rule that any doubt in the construction of the same must be resolved in the favor of the Government. *Nestle's Food Co. (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 451, T. D. 43199, and cases therein cited. \* \* \*.

For the reasons above set forth we overrule plaintiff's claim. Judgment will be rendered for the defendant.