THE SHERWIN-WILLIAMS CO. *v.* UNITED STATES (No. 4616) [1]

United States Court of Customs and Patent Appeals, April 3, 1950

*Lamb & Lerch* (*John G. Lerch* and *David A. Golden* of counsel) for appellant.

*David N. Edelstein*, Assistant Attorney General (*Richard F. Weeks* and *Joseph F. Donohue*, special attorneys, of counsel), for the United States.

[1] C. A. D. 432.

[Oral argument February 7, 1950, by Mr. Lerch and Mr. Donohue]

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, in conformity with its decision, C. D. 1137, overruling a protest of appellant against the assessment of duty by the Collector of Customs on an importation of flaxseed and screenings at the rate of 32½ cents per bushel of 56 pounds on the flaxseed content, pursuant to paragraph 726 of the Tariff Act of 1930 as modified by the trade agreement with Argentina, T. D. 50504, and the trade agreement with Uruguay, T. D. 50786. The screenings were assessed at the rate of five per centum ad valorem under paragraph 731 as modified by the trade agreement with Canada, T. D. 49752.

In its protest, appellant claimed the flaxseed to be free of duty under the provisions of 57 Stat. 607 (1943), 19 U. S. C. § 1001, note (page 2089, 1946 Edition), approved December 22, 1943. No issue was raised with respect to the duty assessed on the screenings.

The pertinent portion of paragraph 726 as modified by the said trade agreements reads as follows:

Flaxseed 32½ cents per bushel of 56 pounds.

The pertinent portion of the statute under which the appellant claimed the flaxseed to be free of duty reads as follows:

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That notwithstanding the provisions of the Tariff Act of 1930, the following, when imported into the United States from foreign countries, and when entered, or withdrawn from warehouse, for consumption, during the period of ninety days beginning with the day following the date of enactment of this joint resolution, to be used as, or as a constituent part of, feed for livestock and poultry, shall be exempt from duty: Wheat, oats, barley, rye, flax, cottonseed, corn, or hay, or products in chief value of one or more of the foregoing or derivatives thereof: *Provided,* that this Act shall not be construed to authorize the importation of wheat for milling purposes. As used in this joint resolution the term "United States" means the several States, the District of Columbia, the Territories, Puerto Rico, and the Virgin Islands.

Sec. 2. The exemption from duties provided for by this joint resolution shall be subject to compliance with regulations to be prescribed by the Secretary of the Treasury.

Pursuant to the statute, regulations were issued by the Secretary of the Treasury, T. D. 50983, and the pertinent provisions thereof are as follows:

58.1 *Free entry authorized.* Under the authority of sections 1 and 2 of Public Law 211, approved December 22, 1943, the following products, if entered, or withdrawn from warehouse, for consumption on or after December 23, 1943, and

before March 22, 1944, and if actually used in the United States as, or as a constituent part of, feeds for livestock or poultry, are exempt from duty:

(1) Wheat, oats, barley, rye, flax, cottonseed, corn, or hay;

(2) Derivatives of the foregoing;

(3) Products wholly or in chief value of one or more of the products mentioned in (1) and (2) above.

The exemption does not apply to wheat or other grain which is used in the manufacture of flour for human consumption, to flaxseed or cottonseed for oil milling, nor to other merchandise to be processed for the purpose of producing a product which is not to be used as, or as a constituent part of, feed for livestock or poultry. If the required use is shown, the exemption is applicable to imported derivatives of the products named in Public Law 211, such as feed flour, linseed cake or meal, and cottonseed cake or meal, and is applicable to products in chief value of one or more of the derivatives and/or the named products. (Public, No. 211, 78th Congress.)

58.2 *Entry requirements.* (a) There shall be filed in connection with the entry an affidavit of the importer that the merchandise which shall be described by name, is imported to be used as, or as a constituent part of, feed for livestock or poultry.

(b) If the product is entered for consumption, there shall also be filed in connection with the entry a bond on customs Form 7551 or 7553, with an added condition, concurred in by the surety, for the payment of duty at the appropriate rate in the event that the proof of required use prescribed by section 58.3 is not produced within 1 year from the date of entry, or any lawful extension of that period. * * *

58.3 *Proof of use.* (a) Within 1 year from the date of entry (in the case of warehouse entries as well as consumption entries) the importer shall submit an affidavit of the superintendent or manager of the manufacturing plant stating the use to which the article has been put. * * *

(b) Upon satisfactory proof of use of the product as, or as a constituent part of, feed for livestock or poultry, the entry shall be liquidated free of duty. When such proof is not filed within 1 year from the date of entry or any authorized extension of the period of the bond, the entry shall be liquidated with the assessment of duty at the appropriate rate under the proper provisions of the tariff act. (Public, No. 211, 78th Congress.)

It appears that the importation from Canada arrived at the port of Cleveland by steamer on December 7, 1943. It was entered on January 27, 1944.

The flaxseed, after it had been screened and foreign matter removed, was ground, placed in a mold surrounded by a cloth and cooked with moisture added under hydraulic pressure of 4,000 pounds per square inch in order to remove the oil content. After the oil had been removed, the residue in cake form was ground, sacked and shipped for use as cattle and poultry feed. The oil so produced is known as linseed oil, and the meal which is left after the oil has been extracted is called linseed oil cake meal. Appellant does a large manufacturing and merchandising business, which among other things involves the manufacture and sale of linseed oil and linseed oil cake meal.

Counsel for the parties interpret the meaning of the term "flax,"

appearing in the hereinabove quoted pertinent statute to be "flax-seed," and *for the purposes of this case,* we accept such interpretation.

Seven witnesses appeared on behalf of appellant and one for appellee. All of the witnesses were qualified to testify concerning the use of flaxseed as animal food. The principal point of difference between the testimony offered on behalf of appellant and that of appellee appears to be whether or not flaxseed, without having gone through the process of obtaining the oil cake, could be used as a cattle feed. While the flaxseed as such could not be used as cattle feed according to witnesses for the appellant because it contains an enzyme which generates prussic acid, a dangerous poison, the witness for the Government testified that prussic acid poisoning is of rare occurrence when cattle are fed flaxseed which has not been processed into oil cake meal. It appears that horses and swine when fed flaxseed are "very very rarely" affected by such poisoning, and while cattle and sheep are more susceptible to being poisoned when fed the same material, that such occurrences are rare. It was agreed by all of the witnesses that the enzyme contained in the flaxseed can be destroyed by heat treatment.

The trial court noted that the dutiable status of merchandise is ordinarily determined by its condition as imported, citing *United States* v. *Citroen,* 223 U. S. 407; *United States* v. *Lo Curto & Funk,* 17 C. C. P. A. (Customs) 342, T. D. 43777. It observed that, under the regulations of the Secretary of the Treasury, exemption from duty does not apply "to flaxseed or cottonseed for oil milling, nor to other merchandise to be processed for the purpose of producing a product which is not to be used as, or a constituent part of, feed for livestock or poultry." The trial court stated that the regulation issued by specific statutory authority is reasonable, and that it does not render inoperative any right granted by the Congress, and therefore is mandatory, citing *United States* v. *Morris European & American Express Co.,* 3 Ct. Cust. Appls. 146, T. D. 32386; *United States* v. *Ricard-Brewster Oil Co.,* 29 C. C. P. A. (Customs) 192, C. A. D. 191; *United States* v. *Browne Vintners Co., Inc.,* 34 C. C. P. A. (Customs) 112, C. A. D. 351; *Kerr-Gifford & Co., Inc.* v. *United States,* 15 Cust. Ct. 187, C. D. 969.

The trial court held that the merchandise as imported was not used as a feed for livestock or poultry nor as a constituent part thereof, and therefore not entitled to free entry as claimed.

The importation arrived on December 7, 1943. The ship in which the merchandise was imported was held in winter storage until ready to unload, and the merchandise entered on January 27, 1944, and withdrawn for consumption on January 28, 1944. Because the merchandise was imported prior to the effective date of the statute and entered and withdrawn for consumption during the effective period

thereof, under the construction of the statute by the trial court—that the merchandise must be both imported and entered during the time permitted by the statute—it was held not to be entitled to free entry.

The issues presented in the appeal are whether or not it was the intent of Congress to admit the flaxseed free of duty when it has been shown that it was subjected to an oil milling process after importation; whether or not the flaxseed can be used safely as a feed for livestock and poultry and was so shown by the weight of the evidence; whether or not it may be presumed that the Congress was aware that flaxseed as such could not be used for feeding purposes; whether or not the aforesaid pertinent statute presents the condition that merchandise must be both imported and entered within the effective period of the statute before it is entitled to free entry; and when was the flaxseed imported.

Because in our opinion the flaxseed was imported prior to the effective date of the statute, and by reason of our agreement with the decision of the trial court that under the terms of the statute it was necessary that foreign goods must have been both imported and entered within the term set out in the statute, it will be unnecessary to discuss any issue except that of when the goods were imported.

Counsel for appellant in their brief contend that the expression, "when imported into the United States from foreign countries," merely fixes the type of merchandise to which such free entry was to be allowed. It is argued that if it had been the intention of Congress to apply the statute only to merchandise which came within the jurisdiction of the ports of the United States during the 90 day period, and which were also entered during that time, then the provision "or withdrawn from warehouse, for consumption" is without meaning. They state under that premise that, "all merchandise imported for the purpose of receiving the benefits of this emergency legislation would have been entered for consumption and there would be no application of the phrase 'or withdrawn from warehouse.'" Counsel for appellant contend that as the Congress employed the latter quoted phrase it intended that all merchandise contained in the warehouses would receive the benefit of the act in order to alleviate an emergency.

In support of that contention, counsel for appellant rely solely on the case of *United States* v. *Cronkhite Co.*, 9 Ct. Cust. Appls. 129, T. D. 37980.

In the case of *United States* v. *DeVillamil*, 12 Ct. Cust. Appls. 255, T. D. 40267, the court held the decision in the *Cronkhite* case, *supra*, to be "limited in scope to the dutiable status of goods entered in bond or for warehouse and *that as to such goods* importation can not be regarded as complete until they have been released from customs custody." In the instant case, it does not appear that the imported

merchandise was entered in bond or for warehouse, and therefore the decision in the *Cronkhite* case, *supra*, has no application.

In the case of *East Asiatic Co., Inc.* v. *United States;* 27 C. C. P. A. (Customs) 364, C. A. D. 112, we had occasion to refer to the case of *United States* v. *Estate of Boshell*, 14 Ct. Cust. Appls. 273, T. D. 41884, in the opinion of which it is stated that "Imported merchandise is merchandise that has been brought within the limits of a port of entry from a foreign country with intention to unlade and the word 'importation' as used in tariff statutes, unless otherwise limited, means merchandise to which that condition or status has attached."

In the *East Asiatic Company* case, *supra*, we did not agree with some of the reasoning of the trial court because it was based mainly upon the doctrine appearing in the *Estate of Boshell* case, *supra*. We held that the facts and circumstances appearing in the record of the *East Asiatic* case, *supra*, were such that the law of the case of *Estate of Boshell*, *supra*, did not apply.

In the case of *Loblaw Groceterias, Inc.* v. *United States*, 22 C. C. P. A. (Customs) 479, T. D. 47481, we quoted with approval from the opinion in the case of *Cunard Steamship Lines* v. *Mellon*, 262 U. S. 100, that, "importation * * * consists in bringing an article into a country from the outside," citing with approval *The Conqueror*, 49 Fed. 99, 102; and *Kidd* v. *Flagler*, 54 Fed. 367, 369, holding that the meaning of "import" is the opposite of the term "export."

In the case of *United States* v. *Field & Co.*, 14 Ct. Cust. Appls. 406, T. D. 42052, it was stated in the opinion that "unless it clearly appears that Congress otherwise intended, the word 'importation' means the bringing of goods within the jurisdictional limits of the United States with the intention to unlade them."

It is apparent that the law with respect to the meaning of the term "import" and "importation" is clear and has been undeviating. Therefore, except where a statute otherwise provides, see *Procter & Gamble Manufacturing Co.* v. *United States*, 19 C. C. P. A. (Customs) 415, 422, T. D. 45578, we reiterate that goods are to be considered to be imported when they are brought within the jurisdictional limits of the United States with intention to unlade. *Porto Rico Brokerage Co., Inc., et al.* v. *United States*, 23 C. C. P. A. (Customs) 16, 76 F. (2d) 605, T. D. 47672.

We agree with the interpretation by the trial court that the involved merchandise in order to be held free of duty would have had to be both imported and entered within the time set forth in the pertinent statute.

Therefore, since the flaxseed here was imported on December 7, 1943, which was prior to the effective date of the statute, December 22, 1943, it can not be held to be duty free under the aforesaid statute.

For the reasons hereinbefore set out, the judgment of the United States Customs Court is *affirmed*.