(C. D. 1683)

ESTATE OF LEV H. PRICHARD v. UNITED STATES

United States Customs Court, Second Division

(Decided February 24, 1955)

Barnes, Richardson & Colburn (James F. Donnelly and E. Thomas Honey of counsel) for the plaintiff.

Warren E. Burger, Assistant Attorney General (Joseph E. Weil and John J. Antus, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: The motor-propelled yacht named the "Lev III" and registered under the laws of the Republic of Panama arrived at the port of Brownsville, Tex., under its own power on or about January 9, 1947, having departed from Southampton, England, on or about December 5, 1946. The vessel was of 278 net tons, 165 feet in length, and was owned by Lev H. Prichard, a resident of the United States. It is noted, however, from exhibit 1, that the yacht called at the port of Key West, Fla., while en route to Brownsville.

The collector of customs classified the yacht for duty pursuant to the provision in paragraph 370 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 370) which provides for "* * * motor boats * * *," and duty was assessed thereon at the rate of 30 per centum ad valorem.

It is the claim of plaintiff that the yacht was not an article imported from any foreign country into the United States within the meaning of title I, section 1 of the Tariff Act of 1930. It is further contended by plaintiff that the assessment of duty was illegal and void "and the decision of the Deputy Collector of Customs requiring that a consumption entry be made was illegal and void."

The pertinent text of the statutes involved is here set forth—

Paragraph 370 of the Tariff Act of 1930:

PAR. 370. Airplanes, hydroplanes, motor boats, and parts of the foregoing, 30 per centum ad valorem. The term "motor boat," when used in this Act, includes a yacht or pleasure boat, regardless of length or tonnage, whether sail, steam, or motor propelled, owned by a resident of the United States or brought into the United States for sale or charter to a resident thereof, whether or not such yacht or boat is brought into the United States under its own power, but does not include a yacht or boat used or intended to be used in trade or commerce, nor a yacht or boat built, or for the building of which a contract was entered into, prior to December 1, 1927.

Title I, section 1, of said act:

TITLE I—DUTIABLE LIST

SECTION 1. That on and after the day following the passage of this Act, except as otherwise specially provided for in this Act, there shall be levied, collected, and paid upon all articles when imported from any foreign country

into the United States or into any of its possessions (except the Philippine Islands, the Virgin Islands, American Samoa, and the island of Guam) the rates of duty which are prescribed by the schedules and paragraphs of the dutiable list of this title, * * *:

It is observed that the term "motor boat" as defined in paragraph 370, *supra,* includes the following:

(1)   A yacht or pleasure boat, regardless of length or tonnage;

(2)   Whether sail, steam, or motor propelled;

(3)   (a) Owned by a resident of the United States, or (b) brought into the United States for sale or charter to a resident thereof;

(4)   Whether or not such yacht or boat is brought into the United States under its own power.

However, the definition does not include—

(a)   A yacht or boat used or intended to be used in trade or commerce;

(b)   A yacht or boat built, or for the building of which a contract was entered into, prior to December 1, 1927.

At the trial, no testimonial proof was introduced, it appearing from the record that adversary counsel stipulated and agreed upon all the salient facts, which are here set forth—

(1)   The article which is the subject of this protest was the yacht, "Lev III," which arrived at the port of Brownsville, Tex., on or about January 9, 1947.

(2)   That said yacht was at all times mentioned herein registered and documented under the laws of the Republic of Panama and was not brought into the United States for sale or charter.

(3)   That said yacht was not used or intended to be used in trade or commerce, nor was it built prior to December 1, 1927, nor was any contract entered into prior to December 1, 1927, for the building of the same.

(4)   That upon arrival of the said yacht at the port of Brownsville, Tex., the master entered the same as a vessel to comply with the statutory provisions and regulations governing the arrival and entrance of seagoing vessels subject to the navigation laws of the United States.

(5)   That the following documents were tendered by the master of the said yacht "Lev III" to the deputy collector of customs in compliance with the aforesaid vessel entry requirements: Form 1385 of the Department of Commerce entitled "Coasting Manifest" and the outward manifest and coastwise permit issued at the port of Brownsville February 12, 1947, which were received in evidence as exhibits 1 and 2, respectively.

(6)   That the said yacht "Lev III" was at the time of entry and clearance referred to in exhibits 1 and 2, owned by Lev H. Prichard, who was a resident of the United States.

(7) At the time of arrival of the said yacht at the port of Brownsville on January 9, 1947, the owner had no intention to document her under the laws of the United States, or to sell or charter the said yacht to a resident of the United States.

(8) That, subsequent to the said arrival of January 9, 1947, and prior to February 4, 1947, the deputy collector demanded that the said owner file a merchandise consumption entry and deposit estimated duties, otherwise the said yacht would not be permitted to leave customs custody or be granted a permit to clear from the port of Brownsville.

(9) That consumption entry 1120–B, the entry under protest here, was filed under date of February 11, 1947; that, under date of February 12, 1947, as exemplified by exhibit 2, a clearance permit was issued by the deputy collector at Brownsville authorizing said yacht to proceed to New Orleans, La.

(10) That said Lev H. Prichard died on June 19, 1949, and that Jack H. Brosseau, Jr., who signed the protest herein, was duly appointed temporary administrator for the purpose of signing said protest.

(11) That, on the 26th day of August 1949, executors of the estate of said Lev H. Prichard were appointed.

(12) That, after the demise of Lev H. Prichard, his estate sold the aforesaid yacht to a corporation domiciled under the laws of one of the United States, said yacht remaining registered under the laws of Panama.

In addition to the foregoing stipulated facts and exhibits 1 and 2, *supra*, various documents were received in evidence as follows:

Exhibit 3—Letters testamentary in the estate of Lev H. Prichard, deceased, issued by the County Court of Cameron County, Tex.

Illustrative exhibit 4—A photograph of the yacht, "Lev III."

Collective exhibit 5—"the entry papers and documents attached to the entry papers, and the Collector's letter of transmittal transmitting the protest to the Customs Court."

Exhibit 6—A document issued by the collector of customs at the port of New Orleans, La., showing the clearance of the "Lev III" from that port following its coastwise voyage covered by plaintiff's exhibit 2.

Plaintiff further agreed to the following facts:

(1) That subsequent to the clearance of the "Lev III" for a foreign port, as established by exhibit 6, it returned to the United States.

(2) That Prichard purchased the "Lev III" and brought it into this country as a pleasure yacht and that it was used by him for that purpose.

(3) That it was not used nor intended to be used in trade or commerce.

There being no dispute as to the pertinent facts of the case, the issue presented for our determination resolves itself into a question of law, namely, whether the "Lev III" is an "article" which was "imported" from any foreign country into the United States within the intendment of title I, section 1, of the Tariff Act of 1930.

In support of this contention, plaintiff urges that the word "importation" connotes "the bringing of goods within the jurisdictional limits of the United States with the intent to unlade them," citing *United States* v. *Field & Co.*, 14 Ct. Cust. Appls. 406, T. D. 42052; *The Sherwin-Williams Co.* v. *United States*, 38 C. C. P. A. (Customs) 13, C. A. D. 432; *Porto Rico Brokerage Co., Inc., et al.* v. *United States*, 23 C. C. P. A. (Customs) 16, T. D. 47672; and *United States* v. *Estate of Boshell*, 14 Ct. Cust. Appls. 273, T. D. 41884. The case of *The Conqueror*, 166 U. S. 110, is also relied upon.

It should be observed, however, that the meaning of the word "importation," as above outlined, is subject to the qualification as expressed in the *Field* case "Unless it clearly appears that Congress otherwise intended * * *."

Nearly 60 years ago, the Supreme Court of the United States held that *The Conqueror*, a pleasure yacht, was not subject to customs duty in accordance with the Tariff Act of October 1, 1890. That act, however, did not contain a provision for a customs duty on vessels.

The Tariff Act of 1922 did provide specifically in paragraph 370 for "motor boats, and parts" which were made dutiable at 30 per centum ad valorem. Shortly thereafter, a motor vessel or motor yacht was constructed in Germany for David B. Roberts and was given the name "Dreamer." The boat was shipped from Hamburg on the deck of a steamer to Montreal, Canada, and later proceeded under her own power with her owner on board via Rouses Point on Lake Champlain, down the Hudson River, and through Long Island Sound to Hartford, Conn. A consumption entry was made and duty assessed pursuant to the terms of paragraph 370, *supra*. The "Dreamer" was the subject merchandise in the case of *David B. Roberts* v. *United States*, 17 C. C. P. A. (Customs) 215, T. D. 43653, and, as here, appellant relied upon *The Conqueror* case, *supra*. In affirming the judgment of the Customs Court which had sustained the action of the collector of customs, our appellate court said in part—

The act of 1890 had no provision for a tax upon vessels *eo nomine* and the court held they could not be included as "manufactures of wood and iron" which it declared was the only general description under which they might be included, if held subject to duty.

Since that decision, Congress has five times made general revisions of the tariff laws, the latest being the act of 1922, paragraph 370 of which is involved in the instant case. The decision of the Supreme Court, as of course, became the law and was operative and binding until changed by the act of Congress.

Further, the court said—

Congress had the power to change the law and, so far as motor boats of the character and type of the *Dreamer* are concerned, we think it did so in the act of 1922. It is quite true, as was stated in the opinion in the *Conqueror* case, *supra* "that from the foundation of the Government, vessels have been treated as *sui generis*, and subject to an entirely different set of laws and regulations from those applied to imported articles." In 1922, however, Congress changed this policy, so far as those vessels which are motor boats are concerned, and provided for their taxation under the customs laws. The fact that the vessel has complied with the navigation laws and regulations and conformed to the tonnage statute, if there be any applicable to her, does not alter the *eo nomine* designation in the customs law. It is upon this *eo nomine* designation that we rest our decision. We agree with the Customs Court that the *Dreamer* is a motor boat as provided for in paragraph 370 of the Tariff Act of 1922, and dutiable thereunder at 30 per centum ad valorem.

To sustain plaintiff's first contention that the "Lev III" is not "an article imported from any foreign country into the United States" upon the theory that "the word 'importation' means the bringing of goods within the jurisdictional limits of the United States with the intent to unlade them," it would seem logically to follow that in order that a motorboat should be subject to duty pursuant to the terms of paragraph 370, *supra*, it would be necessary to import it as merchandise on board a trading vessel. However, it is obvious that Congress in framing the provision in paragraph 370 of the Tariff Act of 1930 intended otherwise, since in its definition of the term "motor boat," when used in the act of 1930, it specifically states, among other things, that it includes a yacht or pleasure boat—

(1) Regardless of length or tonnage;
(2) Whether sail, steam, or motor propelled;
(3) Whether or not such yacht or boat is brought into the United States under its own power.

The suggestion of plaintiff that it was not intended to "import" the "Lev III" into the United States because (1) the vessel was of Panamanian registry, (2) there was no intent to document said yacht under the laws of the United States, and (3) that, after obtaining clearance at Brownsville, the "Lev III" proceeded to New Orleans and thence to a foreign port (Havana, Cuba) is not compelling. If that argument were sound, it would follow that even if a motorboat were *brought into* the United States by a resident thereof, or for sale or charter to a resident, it would escape the imposition of customs duty solely by virtue of its foreign registry. However, the statute is silent on the matter of registry.

Moreover, to adopt the theory of plaintiff, the yacht would not have been subject to duty even after it was sold by the estate of Lev H. Prichard to a corporation domiciled under the laws of the United States, since the yacht retained its Panamanian registry, notwithstanding the fact that paragraph 370 of the tariff act subjects to customs duty not only a motorboat owned by a resident of the United

States but also a motorboat brought into the United States for sale or charter to a resident thereof.

While considerable space is devoted in plaintiff's brief to a discussion of the registry, documentation, and so forth, of the "Lev III," we find that those matters do not affect the question of its dutiable status. As observed by our appellate court in the *Roberts* case, *supra*—

We feel constrained, therefore, to omit any review of the arguments made concerning these questions and proceed, without complicating the opinion with a discussion of matters which we think irrelevant, to determine and decide the issue upon which the case must turn.

The doctrine of *The Conqueror* case, *supra*, that a foreign-built vessel designed only for pleasure, purchased by a native-born American citizen, was not subject to duty pursuant to the Tariff Act of October 1, 1890, is not applicable here for the reasons so clearly stated by our appellate court in the *Roberts* case, *supra*, wherein it was announced in part —"It is quite true, as was stated in the opinion in the *Conqueror* case, *supra*, 'that from the foundation of the Government, vessels have been treated as *sui generis*, and subject to an entirely different set of laws and regulations from those applied to imported articles.' In 1922, however, Congress changed this policy, so far as those vessels which are motor boats are concerned, and provided for their taxation under the customs laws." The court referred specifically to the fact that in paragraph 370 of the Tariff Act of 1922 motorboats were expressly provided for, adding "It is upon this *eo nomine* designation that we rest our decision."

Plaintiff makes reference to *H. W. Chadbourne* v. *United States*, 27 C. C. P. A. (Customs) 85, C. A. D. 66, which, it points out, is clearly distinguishable from the present case.

That case concerned the imposition of duty upon a motor yacht, the "Heluis," which, although it had been brought into this country by a foreigner, was later sold to an American citizen, whereas, in the instant case, the "Lev III" was owned by a resident of the United States upon its arrival in this country. The *Chadbourne* yacht met the requirements of the clause in paragraph 370 of the Tariff Act of 1930 relating to a motorboat "brought into the United States for sale or charter to a resident thereof" while the "Lev III" responds to that clause in said paragraph 370 providing for motorboats "owned by a resident of the United States." Consequently, the *Chadbourne* case has no bearing upon the present controversy.

Cases other than those above cited which are referred to in the briefs of counsel have been examined but, in view of the conclusion we have reached, we deem it unnecessary to elaborate upon them here.

Upon the record before us and for the foregoing reasons, we find and hold that the "Lev III" was properly classified for duty by the collector of customs and overrule the protest on all grounds.

Judgment will be entered accordingly.