No. 62354.—Couture Fabrics, Ltd. v. United States, protest 235987–K (New York).

FORD, Judge: This suit challenges the correctness of the rate of duty assessed on certain woven silk fabrics. Based upon the Presidential Proclamation of August 1, 1951, 86 Treas. Dec. 300, T. D. 52788, relating to withdrawal of reduction in the rate of duty of articles imported directly or indirectly from "Any part of China which may be under Communist domination or control," the collector of customs classified the merchandise under paragraph 1205 of the Tariff Act of 1930 and levied and collected the rate of duty provided therein.

The classification is not contested, but plaintiff contends that silk fabric is entitled to the reduced rate of duty provided for under paragraph 1205 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802.

The record in the case at bar consists of the official papers and a stipulation of fact entered into by and between counsel for the respective parties. The pertinent facts have been stipulated as follows:

1. That the merchandise involved in the protest enumerated above consists of three cases of woven silk fabrics, marked CF 4, 5 and 6, wholly of silk, over 30 inches wide, bleached, valued at more than $5.50 per pound, made in and exported from China on October 23, 1950, and imported at the Port of New York under Warehouse Entry 21039 of January 16, 1951, by Couture Fabrics, Limited, of New York.

2. That the merchandise was transferred to and withdrawn by or on behalf of Nipkow & Kobelt, Inc., of New York, to whom it was sold by Couture Fabrics, Limited, from bonded warehouse, without payment of duties, for exportation and was exported in March, 1951, to Switzerland pursuant to a sale of the merchandise by Nipkow & Kobelt Inc. to Emil Huber & Cie., of Zurich, Switzerland.

3. That the merchandise was cleared through the Swiss Customs on payment of the Swiss Customs Duty and was delivered to Emil Huber & Cie. in Zurich, Switzerland.

4. That Emil Huber & Cie., on inspecting the merchandise, found that it did not comply with the original purchase order and, after negotiation, returned the merchandise to Nipkow & Kobelt, Inc., at New York, where it arrived on September 21, 1951.

5. That the merchandise was transferred by Nipkow & Kobelt, Inc., to Couture Fabrics, Limited, of New York, by whom it was entered under Warehouse Entry 51550 of September 27, 1951, and subsequently withdrawn for consumption on November 9, 1951.

6. That in the liquidation of Entry 51550 duty was assessed at the rate of 55 per centum ad valorem on the merchandise under the provisions of paragraph 1205 of the Tariff Act of 1930 without benefit of Trade Agreement reductions on the ground that the merchandise was imported from China within the provisions of the Presidential Proclamation of August 1, 1951, T. D. 52788, 86 Treas. Dec. 300.

7. That China is and was on the date of the Presidential Proclamation a country controlled by the foreign government controlling the World-Communist movement.

8. If the merchandise had been duty paid and withdrawn at the time of its original arrival in the United States in January, 1951, the correct rate of duty would have been 25 per centum ad valorem under the provisions of paragraph 1205 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, 82 Treas. Dec. 305.

9. That except for the Presidential Proclamation, *supra*, the merchandise would have been assessed with duty at the rate of 25 per centum ad valorem under the provisions of Paragraph 1205 as modified by the General Agreement on Tariffs and Trade, *supra*.

10. That all of the papers transmitted by the Collector to the Court, together with Entry 21039 of January 16, 1951, may be admitted into evidence, subject to the approval of the Court, and the protest deemed to be submitted on the basis of this stipulation.

Based upon the above stipulation of fact, it is evident that the involved silk fabric was made in and exported from China on October 23, 1950, and imported at the port of New York under warehouse entry 21039 of January 16, 1951, by plaintiff herein. These facts establish a direct importation of said merchandise from China, which would have been given the reduced rate of duty, if withdrawn for consumption prior to the issuance of said Presidential proclamation, *supra*. The facts stipulated herein also indicate that the involved merchandise was sold twice, once to a party in the United States and then to a party in Switzerland, although the merchandise was kept in a bonded warehouse and exported from the United States, without payment of United States customs duties. Counsel also agreed that said merchandise was cleared through Swiss customs on payment of their duty and delivered to the purchaser in Switzerland who returned the merchandise after the date of said Presidential proclamation, *supra*, since it did not comply with the original purchase order.

The issue, therefore, presented to the court is whether said silk fabrics are indirect importations within the purview of said Presidential proclamation, *supra*. Both parties cite the case of *United States* v. *Hercules Antiques, The Danwill Company*, 44 C. C. P. A. (Customs) 209, C. A. D. 662, which involved Czechoslovakian glassware imported from Holland, wherein the court held that the merchandise was not entitled to the reduced trade agreement rates, since the importer had not established that the merchandise had become a *bona fide* part of the commerce of an intermediary country and was not merely a passage or transshipment of the merchandise through an intermediate country. The court further indicated that it was the burden of the importer to establish by proper evidence that the connection between the imported merchandise and the country of origin had become so effectively broken that it could no longer be considered an import from that country.

In the case at bar, such evidence has been supplied by the stipulation entered into by counsel, wherein it was agreed that two separate sales were made of the imported merchandise, one by the importer to another firm in the United States and one to a firm in Switzerland. Whether or not it be considered that the

sale by the original importer to another firm in the United States, while in customs custody, effectively broke the connection of the merchandise and the country of origin, the fact that the merchandise was entered, duty paid, and released by Swiss customs did effectively break such a connection.

Accordingly, we are of the opinion that plaintiff has established, by virtue of the facts stipulated herein, that any connection between the merchandise and the country of origin has been effectively broken, so that the woven silk fabric can no longer be considered as an import from any part of China which may be under Communist domination or control.

The case of *Loblaw Groceterias, Inc.* v. *United States*, 22 C. C. P. A. (Customs) 479, T. D. 47481, involved an importation of automobile chassis, originally manufactured in England and subsequently sent to France, but which had been imported from Canada into the United States. By virtue of a proviso contained in paragraph 369 of the Tariff Act of 1922, the court considered the language "imported either directly or indirectly" and held the automobile chassis to be an importation from Canada, saying in part:

The trial court was of opinion that the new language included in this paragraph, "imported either directly or indirectly," should be held to so broaden the scope of this provision, as to include the importation of the goods here involved, as an indirect importation from England. We are, however, unable to agree with this conclusion. For one thing, there is an entire absence of any showing in the record that there was ever any intent, when the goods left England, that they should ultimately enter the United States. They were exported to France, and there, presumably, they entered into the commerce of that country. They were then exported from France to Canada, and became a part of the commerce of the latter country. They were then repaired and rebuilt, the cost of the same being about five times the cost of the chassis, and were exported to the United States. * * *

The goods in the case at bar were not imported into the United States from England indirectly, for they were not imported from England at all, but from Canada. Certainly, goods such as those imported here, having entered into the commerce of France and Canada, at a period many years after their exportation from England, cannot be held to be an indirect importation from England under any proper construction of the phrase "imported either directly or indirectly", as used in said paragraph 369.

In the case of *Camera Specialty Co., Inc.*, and *Rohner Gehrig & Co., Inc.* v. *United States*, 34 Cust. Ct. 27, C. D. 1672, certain lenses and lens parts, originally manufactured in the Eastern Zone of Germany, imported into the United States, and subsequently returned to the Western Zone of Germany for alterations or repairs, were assessed with duty without benefit of the trade agreements. This court held that duty on the cost of the repairs was properly assessable at the reduced rate provided for in the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802.

While, in the instant case, there are no repairs, alterations, or manufacturing processes applied to the involved merchandise, it had become a *bona fide* part of the commerce of Switzerland. It is also obvious that the intent of the plaintiff herein when importing the merchandise was that it become part of the commerce of the United States.

There is no question that the merchandise, when originally imported into the United States on January 16, 1951, should have been assessed with the benefit of the reduced rates of duty. This case does not involve any question of subterfuge to avoid payment of the higher rate of duty since, as indicated, it would have been entitled to the reduced rate, when originally entered.

Based upon the record and for the reasons heretofore stated, we are of the opinion that the involved woven silk fabric is an importation from Switzerland having become a *bona fide* part of the trade and commerce of that country. Said mer-

chandise is, therefore, entitled to the reduced rate of duty claimed by plaintiff herein.

Judgment will issue sustaining the protest claim accordingly.